[No. E015214. Fourth Dist., Div. Two. Nov. 30, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ALONZO HAMILTON, Defendant and Appellant.

COUNSEL

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens and Anne Marie Urrutia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McKINSTER, J.—Defendant and appellant Alonzo Hamilton appeals from his conviction of two counts of carjacking in violation of Penal Code section

215.[1] His appeal presents the simple question of whether or not he was validly convicted of two offenses based on his taking of a vehicle at gunpoint from a husband and wife, one the driver and one the passenger. We hold that he was, and further find that the evidence was sufficient to support the judgment. Accordingly, we affirm.

## STATEMENT OF FACTS

Due to the nature of defendant's contentions, we need not consider his defense of mistaken identity. Instead, we focus on the evidence describing the offense.

Dennis Miller was the owner of a 1989 Mercedes. While preparing to leave the car at a shopping center parking lot, he heard his wife say, "Let's get out of here," or words to that effect. Both were out of the car at that time and both were standing near the rear of the car. Mr. Miller then saw defendant approaching with a gun, and his wife backed away. Defendant demanded Mr. Miller's keys, which the latter gave up. Defendant then told Mrs. Miller, who was standing behind her husband, to give him her purse. She refused, threw her purse under a car, and kicked defendant as he knelt to retrieve it, but he eventually made away with the purse and the car.

## DISCUSSION

### A.

Defendant asserts that there was only one offense of carjacking committed. Section 215 reads in pertinent part as follows: "(a) 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence . . . of a passenger of the motor vehicle, against his or her will . . . accomplished by means of force or fear . . . . (c) This section shall not be construed to supersede or affect Section 211 . . . . However, no defendant may be punished under this section and Section 211 for the same act. . . ."

Obviously the statute, as written, allows a defendant to be convicted of carjacking if he either takes the vehicle from the possessor, or takes it when it is occupied *only* by a "mere" passenger. ▇▇▇ The question before us is whether multiple convictions are proper when the vehicle is taken from the

---

[1]All subsequent statutory references are to the Penal Code.

possessor and a passenger is also present.[2] Put another way, is the clause relating to the passenger intended only to clarify that the crime of carjacking is committed even if the taking is from a person with no legal right of possession, or is it intended to describe other potential victims in multiple-occupant cases?

To begin with, we find ourselves unable to apply the authorities cited by respondent, which hold to the effect that "[w]hen statuory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (E.g., *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) In our view, the statute is *not* entirely clear and, as described above, is subject to more than one interpretation. Furthermore, the clues to legislative intent are not particularly illuminating.

Both sides rely on the same legislative history. Both agree that the intent behind the enactment of the carjacking statute was to ensure severe punishment for offenders, and to close a potential loophole.

On the first point, the members of the Legislature were urged that "we need stiff new laws to crack down on this latest criminal fad." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 60 (1993-1994 Reg. Sess.), as proposed to be amended on Feb. 9, 1993). Accordingly, the crime carries a triad of punishments of three, five, or nine years, as compared with no more than three, four, or six years even for first degree robbery.[3]

The Legislature was also apprised of the belief of an author of the bill that prosecutions for robbery ran an undue risk of failure. It was theorized that in some carjackings the primary intent appeared to be the thrill of the heist, and at trial it was not always easy to prove that the defendant intended to deprive the owner permanently of his property. The latter is, of course, an element of the crime of robbery. (*People* v. *Bacigalupo* (1991) 1 Cal.4th 103, 126 [2 Cal.Rptr.2d 335, 820 P.2d 559].) ■ Thus, the Legislature was advised that ". . . many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense. . . ." (Sen. Com.

---

[2]We note that this case might well have been easier if there had been evidence that Mrs. Miller was a joint owner of the car, in which case she would clearly have had joint possession of the vehicle. However, we have been unable to find any such evidence, and no such theory is argued by the Attorney General.

We also note that Mrs. Miller, if omitted as a carjacking victim, would have been properly named as the victim of a robbery, her purse being the taken object.

[3]By a later amendment effective January 1, 1995, punishment for residential robbery committed in concert was specified at three, six, or nine years. Other types of robbery remain punishable less severely than carjacking.

on Ways and Means, 3d reading analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) as amended on Sept. 8, 1993.) As enacted, section 215 does not require any intent to permanently deprive the owner of the vehicle.

■■■ So far, the parties agree; however, they differ on the conclusions to be drawn from these expressions of legislative intent. Respondent argues that there is a clear intent to punish carjacking as severely as possible. Defendant asserts that the Legislature cannot possibly have intended that he be subject to a sentence of 18 years in prison for taking a car from the driver and a passenger.[4]

For guidance, we turn to cases involving other crimes of violence. Cases involving robbery are the closest and most instructive.

In *People* v. *Miller* (1977) 18 Cal.3d 873, 880-881 [135 Cal.Rptr. 654, 558 P.2d 552], the court found that *both* a clerk and a security guard could be designated as victims of a store robbery. Similarly, in *People* v. *Ramos* (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908] (reversed on other grounds in *California* v. *Ramos* (1983) 463 U.S. 992, 994, 1014 [77 L.Ed.2d 1171, 1176, 1189, 103 S.Ct. 3446]), the court held explicitly that " 'if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper.' " (Accord, *People* v. *Gordon* (1982) 136 Cal.App.3d 519, 529 [186 Cal.Rptr. 373].) As a general rule, multiple convictions and punishments are proper for each act of violence committed against a separate victim.[5] (*People* v. *Phan* (1993) 14 Cal.App.4th 1453, 1466 [18 Cal.Rptr.2d 364].)

Because carjacking is very closely related to robbery, the cases dealing with robberies are significant in directing our interpretation of section 215. In enacting new legislation, of course, the Legislature is presumed to be familiar with relevant California judicial constructions. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 318 [250 Cal.Rptr. 116, 758 P.2d 58].) Thus, in drafting and enacting section 215, the legislators were presumably familiar with the the cases involving a show of force directed to two or more joint possessors of property. If defendant had taken money at gunpoint from the presence of two store clerks, he would have

---

[4]In fact, no such sentence could be imposed, as the subordinate term for a second conviction would be only two years. (§ 1170.1, subd. (a).) In this case, although defendant received the aggravated term for the carjacking with respect to Mr. Miller, his sentence with respect to Mrs. Miller was ordered to run concurrently.

[5]Defendant could therefore have been separately punished if he had been convicted of the *robbery* of Mrs. Miller.

been subject to two convictions of robbery and could have properly been punished for both. (*People* v. *Ramos, supra,* 30 Cal.3d 553.) Defendant's argument that the Legislature could not have meant him to be subject to double punishment is therefore unpersuasive. If a robber may be doubly convicted and doubly punished for a single taking with two victims, there is certainly no reason to suppose that the Legislature intended to treat carjackers more leniently.

However, this leads to the question of whether the passenger should be considered a second victim. Once again, we find the case law relating to robbery to be instructive.

■ As a rule, robbery may be committed against a person who is not the owner of property—indeed, it may be committed against a thief. (*People* v. *Moore* (1970) 4 Cal.App.3d 668, 670 [84 Cal.Rptr. 771].) There is no requirement that the victim have an absolute right to possession of the property. Thus, store clerks and even janitorial employees are routinely held to be proper victims of robberies in which their employers' goods are taken. (E.g., *People* v. *Miller, supra,* and cases cited therein.) For the purposes of robbery, it is enough that the person presently has some loose custody over the property, is currently exercising dominion over it, or at least may be said to represent or stand in the shoes of the true owner. Thus, in *People* v. *Gordon, supra,* two parents were held to be joint victims of robbery in which the robber took only property belonging to their son, who did, however, live in their home; analogizing to cases involving janitors, clerks, and barmaids, the court took the position that the parents had some vague responsibility for the property and were thus sufficiently "in possession" to support the robbery charge. In *Moore,* reflecting an even more tenuous connection to the property, a customer in a shop took money from the register at the robber's insistence, and was held properly named as the victim of robbery.

■ These cases are consistent with the express language of section 215, especially insofar as it provides that a taking from a mere passenger will constitute the crime of carjacking. If the owner/driver is away, the passenger gains at least the loose right to custody and control of the vehicle which was recognized in cases such as *Miller, Gordon,* and *Moore.*

However, the language of section 215 also appears to make a distinction between the possessor of a vehicle and the passenger. As quoted above, the crime may be committed either by a taking from the person in possession of the vehicle, or from the passenger. As we have explained above, a passenger who is the sole occupant during the owner/driver's absence would be held to have a sufficient possessory interest to be the victim of a robbery; if the carjacking statute is to be applied consistently with the robbery laws (and we

think that it is), then the statute does not need to describe the passenger in this situation separately as a potential victim. The description of the passenger must therefore have some additional purpose in the statute. This purpose is to confer victim status on the passenger even if the direct taking is from the owner/driver.

■ "In construing the words of a statute . . . to discern its purpose, the provisions should be read together; an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) ■ As we have explained, a passenger alone in the car has a protectible possessory interest as against a carjacker. To give meaning to the statutory inclusion of the passenger, therefore, it must be construed as applying to the passenger when he or she does *not* necessarily have a possessory interest as the term has been developed in the body of law devoted to robbery.[6]

This construction is reasonable. In the usual case of carjacking involving multiple occupants, all are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation.[7] All are properly deemed victims of the carjacking. Defendant's two convictions were proper.

## B.

Defendant's fallback position is that even if two convictions of carjacking were proper, the evidence does not support the conviction as to Mrs. Miller. We disagree.

Defendant asserts that his only use of force against Mrs. Miller was exerted with the intent to steal her purse. This is not the only reasonable interpretation of the evidence. When defendant approached, Mr. Miller had come around to the back of the car where his wife was standing. Although defendant may have more directly accosted Mr. Miller (who had the keys), the effect of his armed approach was to cause Mrs. Miller to back up. Defendant must certainly have seen Mrs. Miller get out of the car and realized that she had some connection with the vehicle and with the driver. The jury could very reasonably have inferred that defendant's intent was to drive Mrs. Miller away from the car and dissuade her from interfering while

---

[6]See footnote 2, *ante,*

[7]It is not legally significant that, in this case, the Millers were outside the vehicle.

he took the keys from Mr. Miller. The fact that defendant then used force and the infliction of fear to take Mrs. Miller's purse does not negate the possibility of an earlier intent to compel her to give up any interest in the car.[8]

### DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 31, 1996.

---

[8]We note that Mrs. Miller does not seem to have been particularly afraid, as she attempted to frustrate defendant by throwing her purse under a car and then later kicking her wallet out of his reach, as well as by kicking him in the rump. Such foolhardy resistance cannot be encouraged, but it can be applauded when it has not resulted in tragedy.