[No. B186264. Second Dist., Div. Two. Jan. 23, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER COLEMAN, Defendant and Appellant.

## COUNSEL

Jonathan B. Steiner and Ronnie Duberstein, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DOI TODD, J.**—Appellant Christopher Coleman appeals from a judgment entered after a jury found him guilty of carjacking in violation of Penal Code section 215, subdivision (a)[1] (count 1) and second degree robbery in violation of section 211 (count 2). The jury found true the allegations that appellant personally used a firearm in the commission of each offense. (§ 12022.53, subd. (b).) Appellant contends that there was insufficient evidence to support his conviction for carjacking because the victim did not have actual or constructive possession of the vehicle.

We reverse appellant's conviction under section 215. We conclude that the purpose of that statute is not served by applying it under these circumstances, where the victim's only connection to her employer's stolen automobile was her ability to access the automobile's keys left in her office of employment. Section 215 was designed to address "a particularly serious crime that victimizes persons in vulnerable settings and, because of the nature of the taking, raises a serious potential for harm to the victim, the perpetrator and the public at large." (*People v. Antoine* (1996) 48 Cal.App.4th 489, 495 [56 Cal.Rptr.2d 530].) Because the nature of the taking here did not involve the type of harm that section 215 was designed to address, it would be an unwarranted extension of the statute to conclude that appellant's actions constituted carjacking under section 215.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

Viewing the whole record in the light most favorable to the judgment below as we must, the evidence established the following. (See *People v. Ceja* (1993) 4 Cal.4th 1134, 1138–1139 [17 Cal.Rptr.2d 375, 847 P.2d 55].) Oscar Aguayo owned Tony's Glass Service in Palmdale at the time of the incident. He drove a Chevrolet truck with a glass rack for business purposes and a white Chevrolet Silverado (Silverado) for personal use. On December 10, 2004, he drove to the glass shop in his Silverado, parked it in front of the shop at 8:00 a.m., put his keys in the back work area, and drove off in the Chevrolet truck.

Office manager Rosalinda Ortega worked at the glass shop from 8:30 a.m. to 5:30 p.m. Her desk was located just inside the storefront. Ortega's duties included answering telephones, and greeting and assisting customers. She had access to the car keys that Aguayo and the employees hung in a closet in the back work area, but was not responsible for keeping track of the keys or handing them back to the employees.

On December 10, 2004, appellant walked into the glass shop at 3:00 p.m. He was wearing a white T-shirt. He asked Ortega if the shop repaired auto glass, and when she replied in the negative, he took a business card and walked out. Ortega saw his face clearly. At 5:00 p.m., Ortega was preparing to leave when appellant walked in wearing a black sweatshirt, with the hood on, and black gloves. Appellant pointed a gun at Ortega, cocked the trigger, and told her to give him the keys to the truck. Ortega gave him some keys that were on her desk. Appellant then repeated that he wanted the keys to the truck. Ortega got up from the desk, and with appellant following her with the gun pointed at her head, walked toward the back of the shop, and grabbed the keys to the Silverado and gave them to appellant. Appellant then told her to walk to the back of the shop, and she heard the Silverado's alarm go off. She called Aguayo, who said he would call the police. She hung up and also called the police.

On January 17, 2005, Los Angeles Police Department Officer Carleton Jones conducted a traffic stop of a white Chevrolet Silverado truck driven by Steven Coleman, appellant's uncle. Inside the truck he found two license plates matching those belonging to Aguayo's Silverado. The officer arrested Coleman. In a photo lineup, Ortega stated that the individuals in the photos were older than appellant and did not resemble him.

On April 16, 2005, Ortega saw appellant at a gas station. She immediately called the police. She identified appellant after the police apprehended him.

At trial, appellant gave an alibi defense. An expert testified on his behalf that, in general, people are not as good at identifying faces of people of a different race; that stress can adversely affect later identifications; and that people are less accurate in identifying offenders when a weapon is involved.

## DISCUSSION

Appellant contends that the evidence was insufficient to support his carjacking conviction because it failed to establish that Ortega actually or constructively possessed the Silverado.[2] He argues that the evidence showed no actual possession because Ortega did not own the Silverado, was not a passenger in the Silverado, did not have responsibility for the keys and did not have a legally recognized right to control the Silverado. Appellant also argues that the evidence did not show that Ortega constructively possessed the Silverado because she had no recognized or implicit authority over the Silverado or permission to use it, and she had no authority over the keys.

## I. *Standard of Review.*

Generally, in reviewing a claim based on the sufficiency of the evidence, the appellate court views the record in the light most favorable to the verdict below to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].) All conflicts in the evidence and questions of credibility are resolved in favor of the verdict, and every reasonable inference the jury could draw from the evidence is indulged. (*People v. Autry* (1995) 37 Cal.App.4th 351, 358 [43 Cal.Rptr.2d 135].)

But where, as here, the question is whether the language of the statute itself supports a conviction, "our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.] 'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy,

---

[2] Appellant does not challenge his conviction for second degree robbery and we therefore affirm that conviction.

contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.] Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].)

## II. *The Crime of Carjacking.*

The Legislature created the crime of carjacking in 1993 as a direct offshoot of robbery and modeled the carjacking statute on the robbery statute. (*People v. Lopez, supra,* 31 Cal.4th at p. 1059.) Before the enactment of section 215, the forcible taking of a motor vehicle constituted second degree robbery. (*People v. Lopez, supra,* at p. 1057.) Section 215, subdivision (a), provides: " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." According to subdivision (c) of that statute, "[t]his section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211." (§ 215, subd. (c).)

In *People v. Lopez,* the court analyzed the legislative history of section 215 to ascertain the Legislature's intent in making carjacking a separate offense. "The legislative history reveals the underlying purpose for creating the new crime of carjacking: 'According to the author [of the legislative bill]: [¶] There has been *considerable increase in the number of persons who have been abducted,* many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. This relatively "new" crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, *it would be simpler to hot-wire the automobile without running the risk of confronting the driver.* People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang

members and the incidents are drastically increasing. [¶] Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since many of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime.' (Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 60 (1993–1994 Reg. Sess.) July 13, 1993, p. 1, italics added.)" (*People v. Lopez, supra*, 31 Cal.4th at p. 1057.)

In *People v. Antoine, supra*, 48 Cal.App.4th 489, the court similarly observed that the Legislature's reason for enacting a special statute with a penalty greater than that for second degree robbery was that "carjacking is a particularly serious crime that victimizes persons in vulnerable settings" and, because of the nature of the offense, creates the great potential for harm to not only the victim and perpetrator but also the public at large. (*Id.* at p. 495; see also *People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1144 [47 Cal.Rptr.2d 343], fn. omitted ["In the usual case of carjacking involving multiple occupants, all are subjected to a threat of violence, all are exposed to the high level of risk which concerned the Legislature, and all are compelled to surrender their places in the vehicle and suffer a loss of transportation"]; Assem. Com. on Pub. Safety Analysis of Sen. Bill No. 60 (1993–1994 Reg. Sess.) Feb. 23, 1993, p. 5 [discussing the bill's penalty provision and noting that "opening a car door and pushing out the driver would subject the perpetrator to a maximum 15-year penalty"].)

Legislative history therefore indicates that the carjacking statute was enacted to address a specific problem—the taking of a motor vehicle directly from its occupants. The Legislature sought to impose a severe penalty on those who created a specific risk by directly confronting a vehicle's occupants. (*People v. Lopez, supra*, 31 Cal.4th at p. 1057; *People v. Antoine, supra*, 48 Cal.App.4th at p. 495.)

III. *Judicial Construction of the Carjacking Statute.*

Since the enactment of section 215, courts have expanded the reach of the statute beyond a vehicle's occupants. In so doing, courts have analogized the statute's requirements of "possession" and the taking of a motor vehicle "from his or her person or immediate presence" to the same requirements appearing in the robbery statute. (See *People v. Hamilton, supra*, 40 Cal.App.4th at p. 1142 ["Because carjacking is very closely related to robbery, the cases dealing with robberies are significant in directing our

interpretation of section 215"].) For example, in *People v. Gray* (1998) 66 Cal.App.4th 973, 984 [78 Cal.Rptr.2d 191], the court specifically "turn[ed] for guidance to cases involving the crime of robbery" to evaluate the possession requirement in section 215, broadly defining the term to include the exercise of dominion or control.

Relying on robbery cases, appellate courts have taken a similarly expansive view of the "immediate presence" requirement. In *People v. Medina* (1995) 39 Cal.App.4th 643, 649–650 [46 Cal.Rptr.2d 112], the court approved a jury instruction defining the immediate presence requirement modeled after the definition applied to the robbery statute. Concluding that the Legislature "obviously had the robbery statute in mind when it enacted the carjacking statute," the *Medina* court cited the California Supreme Court's discussion of the immediate presence requirement in *People v. Hayes* (1990) 52 Cal.3d 577 [276 Cal.Rptr. 874, 802 P.2d 376]. (*People v. Medina, supra,* at p. 650.) According to *People v. Hayes,* " ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' [Citations.]" (*People v. Hayes, supra,* at pp. 626–627.)

Despite its approval of this broad definition, the court in *People v. Medina* sidestepped any direct application of the definition. In that case, the defendant and others lured the victim into a motel room, tied him up, took his keys and then took his car from the motel parking lot. (*People v. Medina, supra,* 39 Cal.App.4th at p. 651.) The court affirmed the defendant's carjacking conviction, finding that the immediate presence requirement was satisfied because the theft was committed by trick or device. (*Id.* at pp. 651–652.) Quoting *People v. Harris* (1994) 9 Cal.4th 407, 422–423 [37 Cal.Rptr.2d 200, 886 P.2d 1193], which addressed a robbery committed by trick or device, the court reasoned: " ' " *The trick or device by which the physical presence of the [victim] was detached from the property* under his [*possession*] and control should not avail defendant in his claim that the property was not taken from the "immediate presence" of the victim.' " ' [Citation.]" (*People v. Medina, supra,* at p. 651.) The court concluded that the only reason the victim was not in the car when it was taken was because he had been lured away by trick or device, and there was no reason not to apply the robbery rule under such circumstances. (*Id.* at pp. 651–652.)

Later, in *People v. Hoard* (2002) 103 Cal.App.4th 599 [126 Cal.Rptr.2d 855], the court relied on the *Medina* court's discussion of the immediate presence requirement and loosely applied the requirement to circumstances not unlike those presented here. There, the defendant robbed a jewelry store. He demanded that one employee give him her car keys and ordered both the

employees into the back office at gunpoint and tied them up. After the employee was freed, she discovered her car was missing from the parking lot. (*People v. Hoard, supra,* at p. 602.) Despite the absence of any indication of trick or device, the *Hoard* court expressly relied on *People v. Medina, supra,* 39 Cal.App.4th 643, to hold: "In the present case, the elements of carjacking were established. Defendant took possession of [the employee's] car by threatening her and demanding her car keys. Although she was not physically present in the parking lot when he drove the car away, she had been forced to relinquish her car keys. Otherwise, she could have kept possession and control of the keys and her car. Although not the 'classic' carjacking scenario, it was a carjacking all the same." (*People v. Hoard, supra,* at p. 609, fn. omitted.)

### IV. *Appellant Did Not Commit the Type of Offense That the Carjacking Statute Was Designed to Address.*

If we were to continue in lockstep progression with the cases broadly interpreting section 215, we would necessarily affirm appellant's conviction. The only distinction between the facts in this case and those in *People v. Hoard, supra,* 103 Cal.App.4th 599, is that the victim was not the owner of the vehicle. But, according to section 215, the vehicle need only be "in the possession of another . . . ." (§ 215, subd. (a).) To evaluate whether the element of possession was satisfied, we would be guided by the robbery cases addressing that element. (*People v. Gray, supra,* 66 Cal.App.4th at pp. 984–985.) In the analogous instance of robbery, the requisite possession "may be *constructive* rather than actual. [Citation.] 'The victim need not own, possess, or even have the right to possess the property sought by the perpetrator.' [Citation.]" (*People v. Bekele* (1995) 33 Cal.App.4th 1457, 1461 [39 Cal.Rptr.2d 797], overruled on other grounds in *People v. Rodriguez* (1999) 20 Cal.4th 1, 13–14 [82 Cal.Rptr.2d 413, 971 P.2d 618].) As explained in *People v. Frazer* (2003) 106 Cal.App.4th 1105, 1115 [131 Cal.Rptr.2d 319], "the proper standard to determine whether a robbery conviction can be sustained as to an employee who does not have actual possession of the stolen property is whether the circumstances indicate the employee has sufficient representative capacity with respect to the owner of the property, so as to have express or implied authority over the property."

Here, we could conclude that Ortega had sufficient representative capacity with respect to Aguayo so as to establish her implied authority over the Silverado. Ortega was the only employee on the premises while Aguayo was in the field dealing with customers. She had authority over the premises, including access to the back workroom. She had the authority to prevent appellant from going into the back workroom and removing any property (including the keys) or taking the Silverado. Appellant himself must have

believed that Ortega had authority over the property when he demanded that she give him the keys to the Silverado. Under similar circumstances, courts have affirmed robbery convictions, concluding that employees had constructive possession of stolen property. (E.g., *People v. Frazer, supra*, 106 Cal.App.4th at pp. 1115, 1119–1120 [auto parts store employees who had interchangeable functions and access to the cash registers and the safe via the manager had implied authority over and constructive possession of the safe]; *People v. Jones* (1996) 42 Cal.App.4th 1047, 1054 [50 Cal.Rptr.2d 46] [store truckdriver who was present at the time of a cash register robbery had sufficient representative capacity with respect to stolen property]; *People v. Estes* (1983) 147 Cal.App.3d 23, 26 [194 Cal.Rptr. 909] [store security guard had constructive possession of stolen property].)

However, while we could reach the conclusion that the evidence established the requisite elements of carjacking under existing case law, we decline to do so. The victim—a store employee in the general vicinity of the store owner's car keys—does not fall within the category of persons that the carjacking statute was designed to protect. Legislative comments supporting the enactment of section 215 demonstrate that the statute was designed to address the serious problems and risks arising from the theft of vehicles directly from persons in the vehicle. As repeatedly emphasized by the court in *People v. Lopez, supra*, 31 Cal.4th at page 1061, "the legislative history indicates that the Legislature was specifically concerned with the 'considerable increase in the number of persons who have been abducted' in their vehicles and the associated danger to the driver or passenger." (Accord, *People v. Duran* (2001) 88 Cal.App.4th 1371, 1376 [106 Cal.Rptr.2d 812] [section 215 "was passed in 1993 to address what was then an increasingly dangerous problem of people being abducted from their cars, sometimes at gunpoint"].)

Although section 215 was designed to address the problem of individuals being abducted in their vehicles, the statute does not require that the victim be or remain in the vehicle at the time of the theft. (§ 215.) By its own terms, the statute applies where the vehicle is taken from the "immediate presence" of the possessor or passenger. (E.g., *People v. Antoine, supra*, 48 Cal.App.4th at p. 492 [carjacking occurred where the defendant took a truck after pointing a gun at the victims and telling them to get out of their truck, and the victims complied]; *People v. Hamilton, supra*, 40 Cal.App.4th at p. 1140 [carjacking occurred where victims had just exited and were standing next to their car and the defendant approached them with a gun, demanding their keys].)

Discussing the statute's "immediate presence" requirement, *People v. Medina, supra*, 39 Cal.App.4th 643 was the first court explicitly to reject the notion that a carjacking victim must be in or near the vehicle at the time of

the taking. The court reasoned: "By utilizing the terms 'from the person' *or* 'from the immediate presence,' the Legislature was using a more expansive view of presence and not requiring actual physical possession in the sense asserted by defendant." (*Id.* at p. 650.) Applying this expansive view, the court stated: "The statute does not require that the victim be inside or touching the vehicle at the time of the taking" and "the victim need not actually be physically present in the vehicle when the confrontation occurs." (*Ibid.*) The court in *People v. Hoard, supra,* 103 Cal.App.4th at pages 608–609 relied on those statements to conclude that a carjacking occurs when the victim is forced to relinquish her car keys at an inside location and the vehicle is then taken from an outside location. But in reaching this conclusion, the *Hoard* court did not take into account the balance of the discussion in *People v. Medina,* where the court qualified its more expansive comments by limiting the scope of the statute to a driver or passenger. "The statute requires force or fear be applied to the driver and/or passenger. Therefore, clearly a confrontation must occur. As previously discussed, the victim need not actually be physically present in the vehicle when the confrontation occurs. To hold so would ignore the more inclusive meaning found in the 'immediate presence' clause in the statute." (*People v. Medina, supra,* at p. 650.)

We acknowledge that a carjacking may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle. (See, e.g., *People v. Coryell* (2003) 110 Cal.App.4th 1299, 1302–1303 [2 Cal.Rptr.3d 477] [evidence supported carjacking conviction where the driver was in a phone booth next to the vehicle and the knife-wielding defendant chased him away, and the passenger who witnessed the confrontation then ran from the vehicle].) But we cannot conclude that a carjacking has been committed here, where Ortega was not within any physical proximity to the Silverado, the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the Silverado. These circumstances are simply too far removed from the type of conduct that section 215 was designed to address. In reaching this conclusion, "we are mindful of principles of interpretation, which caution against reading a statute so as to achieve absurd results, or results inconsistent with the apparent legislative intent." (*People v. Maldonado* (1999) 72 Cal.App.4th 588, 595 [84 Cal.Rptr.2d 898].) To find that appellant's actions amounted to a carjacking would be to disregard both the language of section 215 cautioning that the statute must not be construed to supersede the offense of robbery and legislative intent demonstrating that the statute was designed to address the violent nature of vehicle takings committed against drivers and passengers. For these reasons, we conclude that the evidence cannot support appellant's carjacking conviction.

## DISPOSITION

Appellant's conviction for carjacking is reversed and his conviction for robbery is affirmed. The matter is remanded for resentencing.

Boren, P. J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied February 21, 2007, and respondent's petition for review by the Supreme Court was denied May 9, 2007, S150698. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.