Filed 10/6/15  P. v. Mitchell CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B256986 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA076743) |
| v. | |
| JAMES R. MITCHELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant James R. Mitchell was convicted following a jury trial of two counts of first degree robbery (Pen. Code, § 211),[1] two counts of kidnapping (§ 207, subd. (a)), and two counts of carjacking (§ 215, subd. (a)). Appellant contends that the evidence was insufficient to sustain his kidnapping and carjacking convictions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

Around noon on April 24, 2013, Chae Soon Guziel parked her car in the driveway in front of her house to unload groceries. She opened one of the house's two garage doors with a button in her car and brought a pizza into the house. Her husband, Dr. Lawrence Guziel, had stayed at home that day due to illness.[2] His green Mercury Mariner was parked inside the garage at the time. Mrs. Guziel called to him from the kitchen to notify him of her arrival. She then walked back to the car to get the rest of the groceries and saw appellant holding a white gun and standing inside or nearly inside the garage.

Mrs. Guziel thought appellant shot her with a taser gun.[3] Appellant approached her and told her not to shout or he would kill her. He bound her hands, legs, and mouth with tape, binding her wrist so tightly that it broke.

After 20 or 30 minutes, Dr. Guziel went to the garage to check on his wife. He saw that she was gagged and that appellant was pointing a gun at her. Appellant told Dr. Guziel to lie down in the hallway adjacent to the laundry room,

---

[1]    Further unspecified statutory references are to the Penal Code.

[2]    Mrs. Guziel was 74 years old at the time of trial, and Dr. Guziel was 75.

[3]    She subsequently noticed a bruise in the area where she thought she had been shot.

2

and Dr. Guziel complied. Appellant bound Dr. Guziel's wrists and legs and gagged him. Appellant moved Mrs. Guziel into the laundry room.

Dr. Guziel was able to speak despite the gag, so he asked what appellant wanted. Appellant said that he wanted to use Dr. Guziel's debit card to make a withdrawal at a bank. Dr. Guziel told appellant to get the debit card from his wallet in the master bedroom.

Appellant dragged the Guziels through the kitchen down a long hallway and into the master bedroom, where he placed them on the bed.[4] The Guziels remained on their bed for approximately three hours, while appellant roamed through the house, pulling down the shades, opening drawers, and searching the closet in the master bedroom.

At some point during the three hours, appellant stated that he wanted to use Dr. Guziel's Mariner to drive to the bank, use Dr. Guziel's debit card, and then return. Dr. Guziel's wallet and car keys were on a desk in the master bedroom, about five feet from the bed. Dr. Guziel did not remember giving the car keys to appellant or appellant taking the keys from him. Appellant did not ask Dr. Guziel for the car keys. Mrs. Guziel never saw appellant take any keys or have keys in his hand.

Before leaving, appellant warned Dr. Guziel that he was going to return to the house and that the "PIN number better be right, or there would be consequences." Appellant left and drove Dr. Guziel's car to the bank.

While appellant was away, the Guziels' daughter, Marie, arrived at the house with her one-year-old son. She heard "mumbling" from the master bedroom and found her parents with "tape on their ankles and zip ties around their wrists" as

---

[4] The distance from the garage to the foot of the bed was 101 feet.

3

well as duct tape around their heads and necks. After Marie removed the gag from Dr. Guziel's mouth, he exclaimed, "Get out, get out, he's coming back, he has a gun, get your son out of here right now." Marie called 911 on speaker phone while she tried to free her parents.

When police officers arrived, they told Marie to leave the house, and they freed her parents. Other officers went to a nearby Bank of America, where they saw appellant in Dr. Guziel's car. Appellant got out of the car, placed a tablecloth over his head and walked to the ATM. The officers arrested him.

*Defense Evidence*

The defense submitted an exhibit depicting a diagram of the Guziels' home and rested on the state of the evidence.

*Procedural Background*

Appellant was charged with two counts of first degree residential robbery (§ 211), two counts of kidnapping (§ 207, subd. (a)), and two counts of carjacking (§ 215, subd. (a)). The information further alleged that appellant personally inflicted great bodily injury on a person 70 years or older. (§ 12022.7, subd. (c).) The information alleged as to all counts that appellant personally used a firearm within the meaning of section 12022.53, subdivision (b). It was further alleged that appellant served three prior prison terms (§ 667.5, subd. (b)) and suffered two prior strikes (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious or violent felony pursuant to section 1170, subdivision (h)(3), and a prior conviction pursuant to section 667, subdivision (a)(1).

The jury found appellant guilty of all six counts and found the allegations to be true. The trial court found the prior conviction allegations to be true. The court

4

sentenced appellant to 40 years to life on count 1, 45 years to life on count 2, and consecutive terms of 40 years to life on the remaining counts, for a total of 245 years to life. Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends the evidence is insufficient to support his convictions for carjacking and kidnapping. We conclude that his convictions are supported by substantial evidence.

"When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' [Citation.] Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

I.     *Carjacking Convictions*

"'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in

5

possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

Appellant contends that the evidence was insufficient to establish two elements of the offense: first, that he took the car from the victims' immediate presence, and, second, that he formed the intent to take the car before or during his use of force or fear. We find the evidence sufficient to establish both elements.

The requirement that the defendant take the car from the victim's person or immediate presence "is similar to the equivalent requirement for robbery." (*People v. Johnson* (2015) 60 Cal.4th 966, 989 (*Johnson*).) Something is within a person's immediate presence for purposes of section 215 "if it is ""so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.""" [Citation.] 'Under this definition, property may be found to be in the victim's immediate presence "even though it is located in another room of the house, or in another building on [the] premises."' [Citation.] . . . 'A vehicle is within a person's immediate presence for purposes of carjacking if it is sufficiently within his control so that he could retain possession of it if not prevented by force or fear.' [Citation.]" (*Ibid.*) "The requisite intent – to deprive the possessor of possession – must exist before or during the use of force or fear. [Citations.]" (*People v. Gomez* (2011) 192 Cal.App.4th 609, 618 (*Gomez*), disapproved in part on other grounds by *People v. Elizalde* (2015) 61 Cal.4th 523, 538.)

We rely on *Johnson* to conclude that the immediate presence element is satisfied here. In *Johnson*, the defendant crashed his van after being chased by a sheriff. He abandoned the van and fled on foot, walking five miles to the victim's home. The victim was in her kitchen, and her purse and car keys were on a counter in the kitchen. The victim's car was in the garage, which was separated from the

kitchen by a breezeway. The defendant entered the victim's home, killed her, robbed her of jewelry and money, and took her car.

The defendant in *Johnson* challenged his carjacking conviction on the same two grounds relied upon by appellant here. First, the defendant claimed the evidence was insufficient for the jury to find he intended to take the victim's car before he killed her. The California Supreme Court rejected this argument, stating that "a reasonable jury could have concluded that after defendant had walked five miles from where he had crashed his van, what he needed most was another vehicle to escape from the area, and that he intended to steal that vehicle." (*Johnson*, *supra*, 60 Cal.4th at p. 989.) The defendant also argued that he did not take the car from the victim's presence because the car was in her garage, separated from the kitchen where she was killed by a breezeway. The court affirmed, stating that "the jury could reasonably find that the car keys were within the victim's immediate reach at the time defendant arrived at her door, and defendant took the keys from where she had been. All of this evidence supports a jury finding that the victim could have retained possession of her keys and car had defendant not prevented her from doing so by force or fear—in this case, deadly force." (*Id.* at p. 990.)

The evidence is sufficient to support the jury's finding that appellant took the car from the Guziels' immediate presence. Although the Guziels were 101 feet away from their cars in the garage when appellant obtained the car key, the key to the car was in the master bedroom where appellant had dragged the Guziels. Specifically, the key was on a desk in the bedroom, about five feet from the bed where appellant placed the Guziels. Therefore, similar to *Johnson*, the car key would have been in Dr. Guziel's immediate reach and he would have retained possession of it had appellant not prevented him from reaching it by use of force –

7

here, by binding and gagging him. (*Johnson*, *supra*, 60 Cal.4th at p. 990; see *People v. Hayes* (1990) 52 Cal.3d 577, 631 ["a rational trier of fact could have found the 'immediate presence' element of robbery to have been proven beyond a reasonable doubt" where the stolen property was in an office 107 feet away from the victim's location and thus "remained under [his] physical control"]; *People v. Hoard* (2002) 103 Cal.App.4th 599, 609 [elements of carjacking established even though the victim was not present in the parking lot when the defendant drove her car away because the defendant forced her to relinquish her car keys].)

Appellant relies on *People v. Coleman* (2007) 146 Cal.App.4th 1363 (*Coleman*), where the court reversed the defendant's carjacking conviction. In that case, the victim worked in the storefront of a glass shop. The defendant walked in, pointed a gun at her, and demanded the keys to a truck which was owned by her employer and parked in front of the glass shop. The court concluded that carjacking had not been established where the victim "was not within any physical proximity to the [truck], the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the [truck]." (*Id.* at p. 1373.) The court acknowledged that "a carjacking may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle. [Citation.]" (*Ibid.*) Nonetheless, the court concluded that the purpose of the carjacking statute was "not served by applying it under these circumstances, where the victim's only connection to her employer's stolen automobile was her ability to access the automobile's keys left in her office of employment." (*Id.* at p. 1365.) *Coleman* did not rely solely on the immediate presence element of carjacking to overturn the conviction, but on the victim's lack of a connection to the vehicle. Unlike in *Coleman*, the car belonged to the victim, Dr. Guziel. He was prevented

8

from retaining possession of his car key by appellant's use of force. The immediate presence requirement thus was satisfied.

The requirement that the intent to deprive the victim of possession exist before or during the use of force or fear is easily satisfied here. (*Gomez, supra,* 192 Cal.App.4th at p. 618.) The Guziels were bound and gagged for approximately three hours and therefore were constantly subject to appellant's use of force. At some point while they were bound and gagged, appellant said that he wanted to take Dr. Guziel's car to the bank to use Dr. Guziel's debit card. Appellant took the car while they remained bound and gagged. The evidence thus is sufficient to establish that appellant formed the intent to take Dr. Guziel's car at the time of his use of force or fear against the Guziels.

II. *Kidnapping Convictions*

Simple kidnapping is defined as follows: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) Appellant contends that the jury verdict on the kidnapping counts was not supported by substantial evidence of asportation.

"In order to establish a kidnapping under section 207, subdivision (a), the prosecution must prove '"(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance." [Citation.]' [Citation.] In determining whether the third element, asportation, has been satisfied, a trier of fact may consider 'not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm

9

above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.' [Citation.]" (*People v. Arias* (2011) 193 Cal.App.4th 1428, 1434-1435.)

The California Supreme Court has explained that "'we have resisted setting a specific number of feet as the required minimum distance [for simple kidnapping], and have further required that the movement must be "substantial in character."' [Citation.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1155.) In determining whether the movement is substantial in character, "the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*People v. Martinez* (1999) 20 Cal.4th 225, 237.) Nonetheless, "[w]hile the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, . . . the jury need only find that the victim was moved a distance that was 'substantial in character.' [Citations.]" (*Ibid.*)

"'[E]ach case must be considered in the context of the totality of its circumstances.' [Citation.] Thus, '[i]n some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient.' [Citation.]" (*People v. Corcoran* (2006) 143 Cal.App.4th 272, 279.)

The kidnapping convictions are supported by substantial evidence. Appellant bound and gagged the Guziels in the garage and dragged them

10

approximately 101 feet to the master bedroom.[5]  The jury reasonably could find that moving the Guziels 101 feet from the garage to the master bedroom was a distance that was substantial in character, and that this movement increased the risk of harm to the Guziels and decreased the likelihood of detection.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.

COLLINS, J.

---

[5]     The prosecutor submitted into evidence photographs and a floor plan of the house, and Dr. Guziel indicated on the floor plan the path by which appellant dragged the Guziels through the house.

11