Filed 8/18/16  P. v. Franco CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERT FRANCO,<br><br>    Defendant and Appellant. | B267395<br>(Los Angeles County<br>Super. Ct. No.  PA079946) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Gelfound, Judge.  Affirmed.

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Albert Franco was convicted of carjacking, robbery, and assault with a deadly weapon. On appeal, he contends his conviction for carjacking fails for want of sufficient evidence. We reject his contention and affirm.

## RELEVANT PROCEDURAL HISTORY

On May 2, 2014, an information was filed charging appellant in counts 1 and 4 with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), in count 2 with carjacking (Pen. Code, § 215, subd. (a)), in count 3 with second degree robbery (Pen. Code, § 211), and in count 5 with assault with a firearm (Pen. Code, § 245, subd. (a)(2)).[1] Accompanying the charges were allegations that appellant had suffered a conviction for robbery (§ 211) in 1998 constituting a felony conviction for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a serious felony conviction (§ 667, subd. (a)(1)). Appellant pleaded not guilty to the charges and denied the special allegations.

A jury found appellant guilty as charged in counts 1 through 4, and acquitted him on count 5. The jury further found that appellant had suffered the 1998 robbery conviction. The trial court sentenced him to a total term of 25 years.

## FACTUAL BACKGROUND

A. *Prosecution Evidence*

The prosecution's principal witnesses were Krystal Torres and Anthony Maldonado, the victims of the offenses charged against appellant. Their testimony, coupled with other evidence, supported the following version of the underlying events: In 2011 or 2012, Torres and Maldonado met appellant through

---

[1] All statutory citations are to the Penal Code.

their friend Cassandra Lopez, and briefly rented a room in his house in Arleta. Later, in early 2014, they encountered appellant in a liquor store. Appellant offered to prepare their taxes for a fee. They agreed. At some point, Torres permitted appellant to borrow her car for several hours.

On February 21, 2014, Torres and Maldonado drove in her car to visit their friend Gabriel, who lived on Rincon Avenue in San Fernando. Because Torres and Maldonado were then homeless, the car contained their personal belongings. They parked in front of Gabriel's house. While Torres, Maldonado, and Gabriel socialized, Lopez arrived in an SUV and offered them a ride to a store so that they could buy cigarettes. They accepted the offer and entered Lopez's SUV.[2]

Thereafter, Lopez parked the SUV in a cul-de-sac down the street from Gabriel's house. A man walked up to the SUV and told Maldonado that appellant was looking for him. Torres and Maldonado left the SUV and saw appellant in the cul-de-sac. Lopez and Gabriel then drove away.

Torres and Maldonado approached appellant, who said that he wanted to pick up their "check" or "taxes," and demanded their i.d.'s and social security numbers, as well as the keys and pink slip to Torres's car. When Torres refused to relinquish the car keys, appellant jabbed her nose with what she described as a "sharp object," while the man who initially hailed Maldonado attacked him with a bat. The man knocked Maldonado to the ground with the bat, which broke.

---

[2] Torres and Maldonado offered different accounts of what occurred while they drove with Lopez. Torres testified that they "w[e]nt for a ride to the store." Maldonado testified that Lopez invited Torres and himself to smoke some "meth" during the drive. Before they could do so, Lopez received a phone call and drove to the cul-de-sac in an apparent effort to meet someone, in lieu of going to the store.

Frightened, Torres gave her car keys to appellant, who ran toward her car, accompanied by his companion. Torres and Maldonado saw them enter the car and drive away.

Several days after the incident, investigating officers told Torres and Maldonado that the car had been found and was located in a tow yard. Upon arriving there, they saw that the car had been looted and burned.

Los Angeles Police Department Officer Bill Coleman, who investigated the incident, described the distance from the cul-de-sac to Gabriel's house as "probably a block."

B. *Defense Evidence*

Robert Royce, appellant's investigator, estimated that the pertinent cul-de-sac is approximately 400 yards from Gabriel's house.[3]

**DISCUSSION**

Appellant contends his conviction for carjacking fails for want of substantial evidence. Under section 215, subdivision (a), carjacking is "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle

---

[3] Appellant also called Torres and Maldonado as witnesses. Torres denied that she, Maldonado, and Lopez went to the cul-de-sac in order to buy "meth," and Maldonado stated that he drove Torres's car when they visited Gabriel. Additionally, appellant submitted testimony from Dannette Cortez and Robert Torres, Gabriel's sister and brother. Both stated that they had no percipient knowledge of the underlying incident.

4

of his or her possession, accomplished by means of force or fear." Appellant argues that there is insufficient evidence he took Torres's car from her "person or immediate presence." As explained below, we disagree.[4]

In *People v. Johnson* (2015) 60 Cal.4th 966, 989 (*Johnson*), our Supreme Court explained that "the 'Legislature modeled the carjacking statute on the robbery statute,' and some of the language in the carjacking statute (§ 215) tracks that of the robbery statute (§ 211). [Citation.] Specifically, both section 211 and section 215 require a taking from the 'person or immediate presence' of the person. [Citations.]"[5] (Quoting *People v. Lopez* (2003) 31 Cal.4th 1051, 1059.) Under the robbery statute, that requirement is subject to the definition of "immediate presence" set forth in *People v. Hayes* (1990) 52 Cal.3d 577, 626-627 (*Hayes*), namely, "that something is within a person's "immediate presence' if it is ""so within his reach, inspection, observation or control, that he could, if not

---

[4] Generally, "'[t]he proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

[5] Under section 211, robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

overcome by violence or prevented by fear, retain his possession of it.""'" (*Johnson*, *supra*, 60 Cal.4th at p. 989.) That definition also governs the analogous requirement in the carjacking statute. (*Ibid*.) Thus, "'[a] vehicle is within a person's immediate presence for purposes of carjacking if it is sufficiently within his control so that he could retain possession of it if not prevented by force or fear.'" (*Ibid*., quoting *People v. Gomez* (2011) 192 Cal.App.4th 609, 623, disapproved on another ground in *People v. Elizalde* (2015) 61 Cal.4th 523, 538, fn. 9.)

Under the *Hayes* definition, a carjacking may occur even though the victim is not inside the pertinent vehicle or closely adjacent to it. (*Johnson*, *supra*, 60 Cal.4th at p. 990.) In *Johnson*, the defendant was charged with murder, carjacking, and other crimes. (*Id*. at p. 973.) At trial, the evidence showed that he entered the victim's house while she was in or near the kitchen, killed her, obtained her car keys, and took her car, which was parked in a garage separated from the kitchen by a breezeway. (*Id*. at p. 972.) Following the defendant's conviction for murder and carjacking, he contended there was insufficient evidence he took the car from the victim's person or immediate presence. (*Id*. at p. 988.) In rejecting that contention, the court noted that "[n]ormally, in order to accomplish a carjacking, the perpetrator must take not only the car itself but the keys to the car." (*Id*. at p. 990.) Applying the *Hayes* definition, the court determined that "the jury could reasonably find that the car keys were within the victim's immediate reach at the time defendant arrived at her door, and defendant took the keys from where she had been. [The] evidence supports a jury finding that the victim could have retained possession of her keys and car had defendant not prevented her from doing so by force or fear . . . ." (*Id*. at p. 990.)

In so concluding, the court pointed with approval to *People v. Hoard* (2002) 103 Cal.App.4th 599. There, the defendant went into a jewelry store, displayed a gun, and secured an employee's car keys. (*Id.* at p. 602.) After confining the employees in a back room, he removed jewelry from the store's display cases and fled in the employee's car, which was parked outside the store in a parking lot. (*Id.* at pp. 602, 608.) The appellate court affirmed the defendant's conviction for carjacking, stating: "Defendant took possession of [the employee's] car by threatening her and demanding her car keys. Although she was not physically present in the parking lot when he drove the car away, she had been forced to relinquish her car keys. Otherwise, she could have kept possession and control of the keys and her car. Although not the 'classic' carjacking scenario, it was a carjacking all the same." (*Id.* at p. 609, fn. omitted.)

Here, the trial evidence showed that after Torres and Maldonado parked their car in front of Gabriel's house, Lopez drove them to a cul-de-sac down the street, where appellant and his companion obtained Torres's car keys by force. Torres's car was visible from the cul-de-sac, as both Torres and Maldonado saw appellant and his companion run to the car and drive away in it. The record discloses two estimates of the distance from the cul-de-sac to the car. Los Angeles Police Department Officer Coleman described it as "probably a block." Appellant's investigator Royce estimated it to be approximately 400 yards.

Appellant contends the distance from the cul-de-sac to Torres's parked car was "far in excess of distances that have been found to be in the range of the 'immediate presence' of a victim." We disagree. In *People v. Webster* (1991) 54 Cal.3d 411, 440 (*Webster*), the defendant and his accomplices invited the victim to visit their campsite by a river and drove with him to a public parking lot, where he parked his car. (*Id.* at pp. 440-441.) They then escorted the victim to the

campsite, which was approximately a quarter mile from the parking lot. (*Id*. at pp. 424, 440.) As they neared the campsite, they killed the victim, and later appropriated his car. (*Ibid*.) On appeal, the defendant challenged his robbery conviction, contending the car was not taken from the victim's immediate presence because it was a "significant distance" from the assault. (*Id*. at p. 439.) Our Supreme Court rejected that contention, concluding that "[t]he distance between [the victim's] auto and the murder scene was not so great as to violate [the *Hayes* definition] as a matter of law. . . . [The victim] and the three other men . . . walked the relatively short distance to the riverbank campsite -- a mere quarter of a mile by [the] defendant's own calculation. Like [the victim], the robbers were on foot, and they were no closer to the car at the moment they assaulted [the victim] than was [the victim] himself. There was no evidence that [the victim] was too far away to perceive and resist an attempt to seize the vehicle." (*Id*. at p. 440.)

That rationale also applies here. Even assuming the jury credited Royce's estimate of the distance from the cul-de-sac to Torres's car, his testimony established that it was equivalent to the distance at issue in *Webster*. Like Torres and Maldonado, appellant and his companion were on foot, and all four were equidistant from the car. Furthermore, Torres and Maldonado could see the car, and were capable of exercising control over it. The evidence thus establishes that the car was """""so within""""" Torres's """""reach, inspection, observation or control, that [she] could, if not overcome by violence or prevented by fear, retain [her] possession of it,""""" for purposes of the *Hayes* definition (*Johnson*, *supra*, 60 Cal.4th at p. 989). As that definition governs the carjacking statute, there is sufficient evidence appellant took Torres's car from her "person or immediate presence" (§ 215, subd. (a)).

*People v. Coleman* (2007) 146 Cal.App.4th 1363, upon which appellant relies, is distinguishable. There, a business owner drove his personal truck to his shop, put the keys in a work area, and departed in another vehicle. (*Id*. at p. 1366.) The defendant entered the shop, pointed a gun at an employee, and demanded the keys to the owner's truck. (*Ibid*.) Although the employee had access to the keys, she was not responsible for keeping track of them. (*Ibid*.) The employee gave the keys to the defendant, who drove away in the owner's truck. (*Ibid*.) Reversing the defendant's conviction for carjacking, the appellate court concluded that the truck had not been taken from the immediate presence of an owner or passenger, stating that the employee "was not within any physical proximity to the [truck], the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the [truck]." (*Id*. at p. 1373.) In contrast, as discussed above, Torres relinquished the keys to her own car, and otherwise satisfied the requirements for "immediate presence" under the *Hayes* definition. In sum, the record discloses evidence sufficient to support appellant's conviction for carjacking.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.

We concur:


WILLHITE, Acting P. J.


COLLINS, J.