[No. F022731. Fifth Dist. Oct. 24, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN ABUNDIO MEDINA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Kathleen Ann Dovidio, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, J.**—Defendant Juan Abundio Medina was charged with kidnapping during a carjacking (count I, Pen. Code, § 209.5),[1] carjacking (count II, § 215), robbery (count III, § 211), and assault likely to produce great bodily injury (count IV, § 245, subd. (a)(1)); it was also alleged that defendant was armed with a firearm (§ 12022, subd. (a)) and personally used a deadly weapon (§ 12022, subd. (b)), a knife, in counts I, II and III. Defendant was acquitted in count I and found guilty of counts II, III and IV. The jury found the enhancements to be not true. Defendant appeals, claiming the trial court erred in its instructions defining the element of immediate presence with regard to the crime of carjacking, the evidence was insufficient to support the carjacking conviction, and the trial court's calculation of conduct credits was erroneous. We affirm.

### FACTS

During the afternoon of January 18, 1994, Luis Larios was tuning up a car. He took the car out and drove it to see how it was working.

Larios stopped at an intersection; defendant approached the car and said "hi." Defendant then grabbed Larios by the neck and got into the car. Defendant held an object, which Larios testified felt like a knife, to Larios's right ribs. Another man and a woman seated themselves in the car.

Larios was told to be quiet and to drive. He complied. While driving, Larios felt something like a gun being held to him by the woman in the back seat. He did not actually see the gun. After driving about two and one-half miles, Larios was ordered to stop the car. Larios got out of the car and was beaten with a stick-like object. The woman placed handcuffs on Larios and also took his wallet, car keys and a chain around his neck. The three assailants drove off. Larios ran and got help.

Shani Moschetti, the female assailant, testified to a different version of the facts. During the afternoon of January 18, 1994, Moschetti was walking down the street pretending to be a prostitute. Larios picked her up, and they agreed to an act of prostitution. Moschetti directed Larios to room 12 of the Lullaby Motel. Larios parked his car directly in front of the motel room, went into the room, and put his car keys in his pocket.

Defendant and his brother, Flavio, came out of the bathroom of the motel room with sticks. Larios crouched down in the corner of the room. Moschetti

---

[1] All further code references are to the Penal Code unless otherwise noted.

handcuffed Larios, took his keys, removed money from his wallet and lifted a chain from his neck. Moschetti tied up Larios's feet with the cord defendant had cut from the television set in the room. Defendant and Flavio hit Larios with sticks and Moschetti kicked him numerous times. They left, taking Larios's car with them.

Moschetti testified that Larios's car was probably 20 feet away from Larios when he was in the room. Moschetti also testified that she was defendant's friend and she did not want to see him convicted of kidnapping or carjacking because they only robbed Larios.

The son of the owner of the Lullaby Motel testified that sometime in January a cord was cut from the television in room 12.

DISCUSSION

I.

*Instruction on Immediate Presence*

Defendant was convicted of carjacking. Carjacking is a relatively new crime, created in 1993. Section 215 provides:

"(a) 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.

"(b) Carjacking is punishable by imprisonment in the state prison for a term of three, five, or nine years.

"(c) This section shall not be construed to supersede or affect Section 211. A person may be charged with a violation of this section and Section 211 [robbery]. However, no defendant may be punished under this section and Section 211 for the same act which constitutes a violation of both this section and Section 211."

Senate Bill No. 60 (1993-1994 Reg. Sess.) created section 215.[2] The reason for the creation of this new crime was set forth by the author:

"According to the author, there has been considerable increase in the number of persons who have been abducted, many have been subjected to

---

[2]Defendant filed a request for judicial notice of legislative history for section 215. The request was deferred pending decision of this appeal on the merits.

The request for judicial notice is granted. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 708 [170 Cal.Rptr. 817, 621 P.2d 856].)

the violent taking of their automobile and some have had a gun used in the taking of the car.

"This relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally, law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing.

"Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since [many] of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime." (Assem. Com. on Pub. Safety analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)

The trial court instructed the jury on the concept of immediate presence by utilizing the instruction typically used in robbery cases when the concept is in issue:

"The meaning of the term 'immediate presence' depends upon the circumstances of each case and refers to an area which is near at hand, not far apart or distant, within which the victim could reasonably be expected to exercise some physical control over property.

"A thing is in the immediate presence of a person if it is so within his reach or control that he could, if not overcome by violence or prevented by fear, retain possession of it."

As evidenced by the facts, as previously set forth, the jury was confronted with two distinct factual scenarios as the basis for the crime of carjacking. The first scenario was the victim's version, a "classic" carjacking where the victim is accosted while in his vehicle and the vehicle is forcibly taken from him. The second scenario, as testified to by Moschetti, involves the victim not being in his car; more specifically, he was inside a motel room when his keys were forcibly taken and his nearby car was driven away.

During closing argument, the People argued that under either scenario, defendant was guilty of carjacking because Larios's car was taken from his immediate presence. The People read the immediate presence instruction to the jury twice during argument. The People claimed that for count I, kidnapping during a carjacking, they had to decide whether to believe Larios or Moschetti.

Defendant argued that if the jurors believed Moschetti's testimony, then they should acquit him of carjacking because the car parked outside the motel room door was not within his immediate presence. Defendant did not contest that he robbed Larios.

 Defendant asserts on appeal the trial court's instruction regarding immediate presence was erroneous, and the definition of immediate presence cannot be applied to carjacking in the same manner that it has been traditionally applied to robbery. Defendant contends that actual physical proximity of the victim to the vehicle is required. Defendant argues that the Legislature characterized carjacking as a crime of confrontation between victim and perpetrator. According to defendant, the Legislature clearly intended a different meaning when it used the term "immediate presence" such that it should comport with this dangerous crime. The danger inherent in carjacking, defendant contends, is that the victim is near or in the car at the time of his contact with the perpetrator. Defendant points to legislative intent and the lack of any discussion regarding the definition of immediate presence to argue that the carjacking statute was meant to apply only to the "classic" carjacking scenario.

Defendant argues that by instructing the jury with the robbery definition of immediate presence:

"[T]he court reduced the prosecution's burden to show that the vehicle was under the actual physical control of the victim at the time of the contact with the perpetrator. The victim was no longer required to be located at or near the vehicle under the current definition of immediate presence. Pursuant to the court's instruction, he or she could be physically located elsewhere, i.e., in a building away from the car. Being in possession of the vehicle was no longer required.

"This broadening of the scope of the statute beyond that which was intended by the legislature left the jury to conclude that a carjacking could occur without any actual contact or confrontation between the driver/passenger and the perpetrator. It reduced a crime of confrontation in which the victim is quickly accosted and exposed to an increased risk of harm to that of a mere taking of property in the absence of the driver/passenger."

Although the defendant makes many challenges to the immediate presence instruction, he never sets forth how the instruction should read. Defendant claims the instruction does not require the victim to be at or near his vehicle. Not so; the instruction states the property must be "near at hand, not far apart or distant."

Defendant contends that the instruction does not require the victim to be in possession of the vehicle. Somewhat to the contrary, the instruction requires that the property (vehicle) be within one's reach or control such that possession could be retained if the victim was not overcome by fear. The statute does not require that the victim be inside or touching the vehicle at the time of the taking. The Legislature included two areas of taking; from the person *or* from the immediate presence. Compare grand theft person which requires that the property must be taken "from the person" of another. (§ 487, subd. (c).)

"The statutory language—'from the person'—is strictly interpreted, and the 'immediate presence' rule in robbery cases [citation] is inapplicable. Hence, taking valuables left on a chair or table, or under or on a bed, or between mattresses or under a pillow, or even from clothes not being worn, is not grand theft." (2 Witkin, Cal. Criminal Law (2d ed. 1988) § 566, p. 644.) By utilizing the terms "from the person" *or* "from the immediate presence," the Legislature was using a more expansive view of presence and not requiring actual physical possession in the sense asserted by defendant.

█ " 'This court has long recognized the principle of statutory construction that "[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation." ' " (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 598 [183 Cal.Rptr. 360, 645 P.2d 1192].)

█ The statute was enacted in 1993. In 1990 the California Supreme Court discussed in detail and changed the definition to be attributed to immediate presence in the robbery context. (*People* v. *Hayes* (1990) 52 Cal.3d 577, 626-629 [276 Cal.Rptr. 874, 802 P.2d 376].) The Legislature obviously had the robbery statute in mind when it enacted the carjacking statute; it expressly stated in the same statute that the crime of carjacking does not supersede the robbery statute.

Defendant argues that the immediate presence instruction broadened the language given here so a "carjacking could occur without any actual contact or confrontation between the driver/passenger and the perpetrator." The statute requires force or fear be applied to the driver and/or passenger. Therefore, clearly a confrontation must occur. As previously discussed, the victim need not actually be physically present in the vehicle when the confrontation occurs. To hold so would ignore the more inclusive meaning found in the "immediate presence" clause in the statute. █ "It is an

elementary rule that a statute should be construed so that 'effect [is] given, if possible, to every word, clause and sentence of a statute." (*Flint* v. *Sacramento County Employees' Retirement Assn.* (1985) 164 Cal.App.3d 659, 665-666 [210 Cal.Rptr. 439], brackets in original.)

■ We fail to see any error in the instruction given. It defines immediate presence to encompass an area in proximity to the vehicle. ■ We thus next focus on whether there is substantial evidence to show the vehicle was purloined from the victim's "immediate presence," as provided in the statute.

## II.

### *Sufficiency of Evidence*

We readily deduce from the jury's acquittal of defendant on the kidnapping during a carjacking and its finding that defendant was neither armed with a firearm nor did he personally use a weapon, that the jury believed Moschetti's version of events and not Larios's version. Thus we analyze this issue based on the motel room carjacking version as substantially the version accepted by the jury.

Defendant asserts the evidence is insufficient to support his carjacking conviction. Again defendant argues that the carjacking statute requires actual physical proximity to the vehicle and his presence in the motel room fails to satisfy this requirement. He contends that because there was no physical and immediate danger to the driver or any occupants in the vehicle there is no rationale for the enhanced penalty.

However the clear nature of the theft involved here as one committed by "trick or device" makes it unnecessary for us to any more specifically define the parameters of "immediate presence" in the context of a carjacking. Moschetti testified that in posing as a prostitute she planned to take Larios's car; defendant and Flavio knew of this and went along with the plan. Moschetti then lured Larios to the motel room, robbed him, took his car keys, and took his car. In the context of a robbery it has been held, " ' "*The trick or device by which the physical presence of the* [*victim*] *was detached from the property* under his [*possession*] and control should not avail defendant in his claim that the property was not taken from the 'immediate presence' of the victim." ' " (*People* v. *Harris* (1994) 9 Cal.4th 407, 422-423 [37 Cal.Rptr.2d 200, 886 P.2d 1193], brackets in original.)

Here the defendant planned a forceful taking of Larios's car from Larios. The only reason Larios was not in the car when it was taken and this was not

a "classic" carjacking, was because he had been lured away from it by trick or device. There is no reason to not apply the trick-or-device robbery rule in such a situation. The immediate presence requirement was satisfied. Substantial evidence supports the conviction.

## III.

### *Presentence Credits\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Ardaiz, P. J., and Henry, J.,† concurred.

---

*See footnote, *ante* page 643.

†Judge of the Fresno Superior Court sitting under assignment by the Chairperson of the Judicial Council.