Filed 4/30/14  P. v. Perez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID CONSTANTINO PEREZ,<br><br>    Defendant and Appellant. | B246943<br><br>(Los Angeles County<br>Super. Ct. No. KA097415) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mike Camacho, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant David Constantino Perez (defendant) appeals from his carjacking conviction, challenging the sufficiency of the evidence to support a finding that he took the victim's car from her immediate presence. We conclude the conviction is supported by substantial evidence and we affirm the judgment.

## BACKGROUND

### Procedural history

After an altercation and the taking of Jasmine Limon's (Limon) automobile, defendant was charged with: count 1, carjacking in violation of Penal Code section 215, subdivision (a);[1] count 2, dissuading a witness, in violation of section 136.1, subdivision (b)(1); count 3, possession of a firearm by a felon in violation of section 29800, subdivision (a)(1); count 4, possession of ammunition by a felon in violation of section 30305, subdivision (a)(1); count 5, battery against his child's parent in violation of section 243, subdivision (e)(1); and count 6, misdemeanor battery, in violation of section 242.

The information also alleged that defendant personally used a firearm in the commission of count 1, within the meaning of section 12022.53, subdivision (b). As to the felony counts it was alleged that for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), defendant had suffered a prior serious or violent felony conviction or juvenile adjudication. The same prior conviction was alleged under section 667, subdivision (a)(1), and as a one-year prison prior for purposes of section 667.5, subdivision (b).

A jury found defendant guilty of counts 1, 3, 4, and 5, as charged, and not guilty of counts 2 and 6. The jury also found true the allegations that defendant had personally used a firearm in the commission of the carjacking, and in a bifurcated proceeding, the trial court found true the prior felony conviction. On January 22, 2013, the trial court struck the prior strike conviction and the one-year prison prior pursuant to section 1385 and *People v. Superior Court (Romero)* 13 Cal.4th 497, for all but use as the five-year

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

recidivist enhancement.  The court sentenced defendant to a total prison term of 20 years, comprised of the middle term as to count 1, enhanced by 10 years for use of a firearm in addition to a five-year recidivist enhancement.  The terms imposed on the remaining counts were ordered to run concurrently.  The court also ordered victim restitution, imposed mandatory fines and fees, and granted presentence custody credit of 345 days.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

On March 11, 2012, Limon drove defendant, their two-year-old daughter and herself to a family barbecue in her car.  Defendant never drove Limon's car, as he did not drive and had no driver's license.  The legal owner of the car was Limon's grandfather, who bought it for her to drive.  At the barbecue defendant drank quite a bit and on the way back home he wanted to stop for more beer.  His money was in Limon's purse.  She refused to give defendant the money or stop for beer.  Defendant was angry and did not speak to her for the rest of drive, instead calling someone to suggest that they "hang out."

Defendant lived with his sister Mayra Perez (Perez) and his mother Maria Del Carmen Lopez (Lopez).  Limon lived elsewhere with her grandfather.  Limon had planned to spend the night of the barbeque at defendant's residence.  When they arrived she went to the bedroom to change the baby's diaper, and left her purse in the car.  After she disposed of the diaper, Limon returned to the bedroom holding the baby.  Defendant stood in the doorway, still angry, demanding his money.  When Limon refused to get the money, defendant lifted his sweater and displayed a gun in his waistband.  Frightened, Limon went to the living room and sat next to Lopez.

Defendant stormed into the living room and grabbed Limon's arm while angrily and aggressively demanding her keys.  Defendant pushed Lopez and yelled at her when she tried to intervene.  When Limon moved to another couch, defendant grabbed her by the hair, pried the car keys from her hand, and left the apartment.  When Limon and Lopez followed defendant outside, Limon saw defendant behind the wheel of her car, struggling to release the brake.  Limon's car was parked behind an iron gate about 33 to 48 feet from the bottom of the stairwell leading to defendant's apartment.  Limon was

3

approximately 12 feet from the gate, speaking on her cell phone to the 911 operator while Lopez unsuccessfully attempted to open the gate. Defendant finally released the brake and drove past the gate saying, "I'll shoot you, bitch, if you call them," referring to 911.

Limon told the 911 operator that defendant had a gun, that he had demanded the keys and that he had pulled her hair before stealing her car. West Covina Police Department Officer Jose Marquez responded to the call. On his way to defendant's residence he was flagged down by citizens who had just seen a reckless driver about a block away. When he found Limon, she was very emotional, crying, and shaking uncontrollably. She told the officer what had happened and said she was afraid because defendant was a known gang member and had brandished a gun. She was afraid defendant would return to harm her.

Investigating officer Detective Jeff Mosely recorded the interview of defendant following his arrest. The audio-video recording of the interview was played for the jury. Defendant told Detective Mosely that he was drunk that night, that he and Limon argued about the money, and he demanded the car keys. Defendant did not remember whether he had a gun, although he admitted sometimes keeping a gun in his bedroom closet. Defendant also admitted he pulled Limon's hair and threatened her, but he did not remember what he said.

**Defense evidence**

Perez testified that she had never seen her brother drive a car, and that there was a liquor store about a block away from the family's apartment. Lopez testified that she owned a car which defendant never drove.

## DISCUSSION

Defendant's sole contention on appeal is that the carjacking conviction was not supported by substantial evidence that the car was taken from Limon's immediate presence. We thus review the whole record in the light most favorable to the judgment below to determine whether it discloses "evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v.*

4

*Virginia* (1979) 443 U.S. 307, 318-319.)  We must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  We do not reweigh the evidence or resolve conflicts in the evidence.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)  Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, . . . against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

Defendant challenges the "immediate presence" element of the crime, arguing that Limon was not in "any physical proximity to the vehicle at the time it was taken" because she was in defendant's "apartment seated in the living room when [defendant] grabbed the car keys from her pocket."

As the carjacking statute was modeled on the robbery statute, "immediate presence" has the same meaning in both statutes.  (*People v. Medina* (1995) 39 Cal.App.4th 643, 650 (*Medina*).)  Under the robbery statute, "[t]he generally accepted definition of immediate presence . . . is that '"[a] thing is in the [immediate] presence of a person, . . . which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it."' [Citations.]"  (*People v. Hayes* (1990) 52 Cal.3d 577, 626-627; § 211.)

Defendant argues that a carjacking conviction must be supported by evidence that the perpetrator was a stranger, not a domestic partner or co-parent, who "approached a person's car at gunpoint or with some other weapon, forced the victim from the car, and drove off in the victim's car."  Defendant fails to cite authority requiring evidence of a weapon or giving immunity to a domestic partner from liability for carjacking.  Further, "property may be found to be in the victim's immediate presence 'even though it is

located in another room of the house, or in another building on [the] premises.' [Citations.]" (*People v. Hayes, supra*, 52 Cal.3d at pp. 626-627.) Thus, although there must be a confrontation between the defendant and the person in possession of the car for a carjacking to occur, the victim need not be inside the automobile or touching it at the time the force or fear is applied. (*Medina, supra*, 39 Cal.App.4th at pp. 650-651.) In *Medina*, a finding of immediate presence was sufficiently supported by evidence that the victim was attacked and his keys taken from him by men inside a motel room before the assailants drove off in the victim's car which had been parked in front of the motel. (*Id.* at pp. 651-652.)

Similarly, in *People v. Hoard* (2002) 103 Cal.App.4th 599, the defendant was inside a jewelry store robbing his victims at gunpoint when he demanded the car keys of one of his victims. It was only after the robbery that the victim saw that her car was missing from the parking area outside. (*Id.* at p. 602.) The appellate court held that "the elements of carjacking were established. Defendant took possession of [the victim's] car by threatening her and demanding her car keys. Although she was not physically present in the parking lot when the defendant drove the car away, she had been forced to relinquish her car keys. Otherwise, she could have kept possession and control of the keys and her car. Although not the 'classic' carjacking scenario, it was a carjacking all the same." (*Id.* at p. 609, fn. omitted.)

More recently, in *People v. Gomez* (2011) 192 Cal.App.4th 609 (*Gomez*), the victim was assaulted on the grounds of his apartment complex away from the parking area; the assailants beat him and either took his keys or found them on the ground during the attack, and then drove off in their own car; the assailants returned 10 or 20 minutes later, after the victim had fled into his apartment, and attempted to enter the apartment while the victim watched; after failing to gain entry, the assailants then went to the victim's truck where it was parked about 10 feet from the apartment, used the key, and drove the truck away. (*Id.* at pp. 613-615.) The appellate court found that the immediate presence requirement was easily met, despite the location of the victim in his apartment 10 feet away. (*Id.* at p. 624.) The court held that the jury could reasonably find that the

6

victim's fear of further assault prevented him from acting to retain possession of his truck. (*Ibid*.)

Defendant contends that his definition of immediate presence is supported by a comparison to the facts of *People v. Coleman* (2007) 146 Cal.App.4th 1363 which we found to be "simply too far removed from the type of conduct that [the carjacking statute] was designed to address." (*Id*. at p. 1373.) In *Coleman*, however, we acknowledged that "a carjacking may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle. [Citation.]" (*Ibid*.) There, the keys to a company car had been turned over during a store robbery by an employee who was not responsible for the car and did not drive it; and there was no evidence that the employee would ever have been a driver or passenger in the car. (*Ibid*.) *Coleman* thus turned on the element of possession, not immediate presence. (See *id*. at pp. 1371-1373.) Here, possession was not an issue, as the car had been given to Limon for her regular use and defendant does not claim otherwise.

We conclude that substantial evidence established that Limon's car was sufficiently within her reach, observation, or control, such that the jury could reasonably find that she could have retained possession of it if defendant had not prevented her by force or fear. The car was parked outside the apartment; the keys to the car were on Limon's person; defendant confronted her and forced her to relinquish her keys in the apartment by means of threats and a physical assault, and then used the keys to take Limon's car as she watched. Defendant threatened Limon again as he drove away, causing her to fear that he would return to harm her. The immediate presence element was thus satisfied. (Cf. *Gomez, supra*, 192 Cal.App.4th at p. 624.)

7

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.