Filed 2/1/21  P. v. Rodriguez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DELIA RODRIGUEZ et al.,<br><br>    Defendants and Appellants. | B300324<br><br>(Los Angeles County<br>Super. Ct. Nos. KA119895) |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed in part and reversed in part with directions.

Lillian Hamrick, under appointment by the Court of Appeal, for Defendant and Appellant Delia Rodriguez.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant Vincent Gerardo Neukomsaravia.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Delia Rodriguez and Vincent Neukomsaravia of two counts each of carjacking (Pen. Code,[1] § 215) and two counts each of assault with a deadly weapon (§ 245, subd. (a)(1)). The victims of the crimes are Delia's parents, Homero and Frances Rodriguez.[2] The jury also found true allegations that Delia personally inflicted great bodily injury on Homero and Frances, within the meaning of section 12022.7, subdivision (a). In a bifurcated proceeding, the court found true certain enhancement allegations against each defendant, including prior prison term allegations under section 667.5, subdivision (b) against Neukomsaravia. The court sentenced Delia to 19 years 4 months in prison and sentenced Neukomsaravia to prison for 22 years 4 months.

Defendants contend that the evidence is insufficient to support the carjacking convictions. Neukomsaravia further argues, and the Attorney General agrees, that the prior prison term enhancements under section 667.5, subdivision (b), must be stricken because of a recent amendment to that statute limiting its application to prior prison terms for sexually violent offenses. We agree that the evidence is insufficient to support the conviction under count 1 of carjacking against Frances and that the prior prison term enhancement findings under section 667.5, subdivision (b), regarding Neukomsaravia must be stricken. We reject the defendants' other contentions. We therefore reverse the judgment in part and direct the court to resentence defendants.

---

[1] Subsequent statutory references are to the Penal Code.

[2] Delia, Homero, and Frances have the same surname. To avoid confusion, we will refer to them by their first names. We intend no disrespect.

# FACTUAL SUMMARY

On December 31, 2018, Delia was residing with her parents Homero and Frances. During that evening and the early hours of January 1, 2019, Pomona police responded to the residence three times. The first incident involved Delia breaking windows in the house. The police took no action against Delia.

The second incident began shortly after midnight on January 1, 2019. As Homero and Frances were going to sleep, they were roused by the sound of Delia breaking windows again. Homero got out of bed, picked up a baseball bat, and chased Delia down the street. Delia held a metal pole or bar. Frances followed and attempted to keep Homero and Delia apart. Delia's boyfriend, Neukomsaravia, was nearby holding a knife.

The sound of people yelling brought out the Rodriguezes' next-door neighbors Heather Hutton and Javier Miranda, who attempted to intercede and calm the situation. Homero swung his baseball bat in an attempt to knock the pole from Delia's hand but hit Hutton's knee, which prompted Miranda to punch Homero in the face, knocking Homero to the ground. Delia and Neukomsaravia then returned to the Rodriguez residence, followed by Homero and Frances.

Back inside the house, Delia and Neukomsaravia confronted Homero in the kitchen. According to Homero, Neukomsaravia "came at [him] with a knife" and tried to stab him, and Delia hit Homero on the head with a bar or pole. By the time police responded, Delia and Neukomsaravia had fled.

Homero was treated by paramedics at the scene, then went to a hospital where he received seven surgical staples to treat his head injury.

The third incident began when Homero and Frances returned home from the hospital at about 5:30 a.m. The house had been

ransacked and Delia and Neukomsaravia were standing in the kitchen. Delia held a machete and Neukomsaravia held a hammer as he walked toward Homero. Delia asked Frances for the keys to her car and Frances refused because Delia had previously "wrecked" it.

The confrontation moved outside to the front of the house where Homero's truck was parked in the street. Delia and Neukomsaravia then attacked Homero and Frances and demanded the keys to the truck. Delia waved the machete at Frances, called her, "bitch," and threatened to kill her. According to a neighbor, Neukomsaravia chased after Homero, "whack[ed]" him with a broom, and demanded: "[G]ive me the keys, give me the keys," while Delia chased Frances and hit her with the machete, saying, "if you don't give me the keys I'm gonna kill you, I'm gonna kill you." Homero eventually gave the keys to his truck to Delia to stop Delia from threatening Frances with the machete. During the altercation, Delia hit Frances's hand with the machete, causing a cut that required stitches.[3]

---

[3] Our factual summary is drawn in accordance with our substantial evidence standard of review, which, on appeal from a criminal conviction, requires us to view the evidence in the light most favorable to the prosecution. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Hill* (2000) 23 Cal.4th 853, 855.) We note, however, that there was conflicting evidence at trial on material issues. For example, Homero and Frances, contrary to statements they made to police officers near the time of the incidents, testified that neither defendant struck them and that Homero gave Delia the keys to his truck voluntarily, not because of any threats or force. Homero and Frances further testified that Homero's head injury was caused by the neighbor who punched him and Delia cut herself accidentally when she reached out to take the machete from Delia.

Delia drove the truck away from the house. According to one witness, Neukomsaravia was a passenger in the truck. According to Homero and Frances, Delia drove away in one direction while Neukomsaravia ran from the house in the opposite direction.

At about 8:10 that evening, Los Angeles police found Homer's truck with Delia inside.

## DISCUSSION

### A. *Sufficiency of the Evidence of Carjacking*

Delia and Neukomsaravia contend that the evidence is insufficient to support the convictions for carjacking. "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; accord, *People v. Coleman* (2007) 146 Cal.App.4th 1363, 1367 (*Coleman*).) To the extent we are required to interpret the statute, we do so independently. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189.)

" 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

Defendants were convicted of two carjacking counts. Count 1 was based on the allegation that they took a vehicle—Homero's truck—from Frances's possession; count 2 alleged that they took

5

the truck from Homero's possession. They challenge count 1 on the ground that there is no substantial evidence that Frances possessed the truck. We agree.

Carjacking under section 215 requires the defendant take a motor vehicle from "the possession of another." The statute does not define "possession." In construing the term, courts have not limited possession to "actual physical possession" of the vehicle or required that the victim be inside or touching the vehicle when the crime occurs. (*People v. Medina* (1995) 39 Cal.App.4th 643, 650; see *Coleman, supra,* 146 Cal.App.4th at p. 1372 ["the statute does not require that the victim be or remain in the vehicle at the time of the theft"].) Possession or control of keys to the vehicle is ordinarily sufficient to establish possession of the vehicle. (See *People v. Johnson* (2015) 60 Cal.4th 966, 990; *People v. Hoard* (2002) 103 Cal.App.4th 599, 608–609; *People v. Medina, supra,* 39 Cal.App.4th at p. 651.)

Here, Frances was not in the truck when defendants demanded the keys and there is no evidence that she had possession or control of keys to the truck during the commission of the crime. The only set of keys to the truck mentioned in our record are the keys that Homero possessed and eventually gave to Delia. That Frances did not possess keys to the truck is also suggested by the fact that although Delia had cut Frances's hand with a machete and was threatening to kill her, it was Homero who produced the keys to stop Delia's threats. Nor can Frances's possession of the truck be inferred from evidence of the truck's ownership or use. Homero testified at trial that the truck belongs to him; and when a police officer asked Frances and Homero, "Whose truck is it?," Frances was silent as Homero answered, "Mine." A neighbor also described the truck as Homero's. Indeed, there was no evidence

6

that Frances ever possessed a key to the truck, had ever driven the truck, or even been a passenger in the truck.[4]

The Attorney General asserts "there is no question" that Frances possessed the truck because Homero and Frances "were married and living together as husband and wife." To support this point, the Attorney General quotes CALCRIM No. 1650 for the propositions that " '[t]wo or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person.' " These statements of law do not resolve the sufficiency of the evidence issue. Although Homero and Frances *could* possess the truck simultaneously and Frances *could* have had control over the truck or the right to control it, the Attorney General refers us to no evidence to support a finding that Frances did possess or have control over the truck. The fact that Homero and Frances were married, without more, is not substantial evidence of Frances's possession or control of either the truck or its key during the commission of the crime. Based on this record, therefore, we agree with defendants that there is no substantial evidence to support the conviction of the carjacking count based on Frances's possession of the truck.[5]

The defendants assert a different argument as to the carjacking conviction based on Homero's possession of the truck.

---

[4] The prosecutor stated in his closing argument that Homero testified that he and Frances "both drive the truck." No such testimony is in the record and the Attorney General does not repeat the statement on appeal.

[5] Because we reverse the convictions on count 1, the related true finding on the great bodily injury enhancement alleged against Delia under section 12022.7, subdivision (a) is also reversed.

Instead of challenging the sufficiency of the evidence as to any particular element of the crime, they argue that the carjacking statute "was never intended to apply to a family crisis that ends with the taking of the father's truck" and that applying the carjacking statute to the facts in this case "stretches the concepts underlying section 215 and the legislative intent to the point of absurdity." We reject this argument.

Defendants rely on *Coleman, supra,* 146 Cal.App.4th 1363. In that case, the owner of a glass service shop drove his Chevrolet Silverado to the shop, parked it in front of the shop, put his keys to the Silverado in a back work area, then drove away from the shop in another vehicle that he used for work. (*Id.* at p. 1366.) While the owner was away, the defendant entered the shop, pointed a gun at the office manager, and told her to give him the keys to the Silverado. The office manager walked to the back of the shop, grabbed the keys to the Silverado, and gave them to the defendant. (*Ibid.*) The Court of Appeal reversed the defendant's carjacking conviction. (*Id.* at p. 1374.)

The *Coleman* court reviewed the legislative history of section 215, which "indicates that the carjacking statute was enacted to address a specific problem—the taking of a motor vehicle directly from its occupants." (*Coleman, supra,* 146 Cal.App.4th at p. 1369.)[6] Although the court "acknowledge[d] that a carjacking

---

[6] The *Coleman* court quoted an Assembly Committee report, quoted in *People v. Lopez* (2003) 31 Cal.4th 1051, which states: " ' "There has been *considerable increase in the number of persons who have been abducted,* many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. This relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, *it would be simpler to hot-wire the automobile without running the*

may occur where neither the possessor nor the passenger is inside or adjacent to the vehicle" (*id.* at p. 1373), it concluded "that the purpose of [section 215] is not served by applying it under these circumstances, where the victim's only connection to her employer's stolen automobile was her ability to access the automobile's keys left in her office of employment" (*id.* at p. 1365). The office manager, the court explained, "was not within any physical proximity to the Silverado, the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the Silverado." (*Id.* at p. 1373.)

*Coleman* is easily distinguishable. Although the precise location of Homero, the truck, and Delia is not clear from our record, Frances indicated that Delia had confronted her near the side of the truck in front of the house. Although Homero was being attacked by Neukomsaravia, he was close enough to Delia to toss the keys to the truck to her. In contrast to the facts in *Coleman*, there was no storefront separating the truck from Homero

---

*risk of confronting the driver.* People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally[,] law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing. [¶] Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car) since many of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime." [Citation.]' " (*Coleman*, *supra*, 146 Cal.App.4th at pp. 1368–1369, quoting *People v. Lopez, supra*, 31 Cal.4th at p. 1057, quoting Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)

when the crime occurred, the keys Homero relinquished were his own, and the car belonged to Homero.

Aside from the factual differences with *Coleman*, there is no merit to defendants' suggestion that the statute, when viewed in light of the Legislature's intent, does not apply under the present facts. Although Homero was not an occupant of the truck when Delia took it from him, section 215 is not so limited; it applies when the vehicle is taken from the victim's possession, either "from the person or immediate presence." (§ 215.) Thus, even if the "specific problem" the Legislature sought to address in enacting the statute was "the taking of a motor vehicle directly from its occupants" (*Coleman*, *supra*, 146 Cal.App.4th at p. 1369), according to the text the Legislature enacted, "[i]t is not necessary that the victim be physically present in the vehicle when the confrontation occurs" (*People v. Gomez* (2011) 192 Cal.App.4th 609, 623). Nor is there any language in the statute or legislative history to support defendants' assertion that the statute does not apply when the crime is committed during a "family crisis." We therefore reject defendants' challenge to the convictions on count 2.

B. ***Neukomsaravia's Enhancement Under Section 667.5, Subdivision (b)***

Neukomsaravia's sentence includes two 1-year enhancements under section 667.5, subdivision (b), for having served a prior prison term for a felony conviction. At the time of Neukomsaravia's sentencing in July 2019, the enhancement was proper. In 2019, however, the Legislature enacted Senate Bill No. 136, which amended section 667.5, subdivision (b), such that it applies only where the prior prison term was served "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§ 667.5, subd. (b); Stats. 2019, ch. 590, § 1,

10

p. 5235.)  The amendment went into effect on January 1, 2020.
(See Cal. Const., art. IV, § 8, subd. (c), par. (1).)

Because the judgment in the current case is not yet final,
Neukomsaravia is entitled to the benefit of the amendment.  (*People
v. Winn* (2020) 44 Cal.App.5th 859, 872–873 [Senate Bill No. 136
applies to nonfinal judgments on appeal]; *People v. Lopez* (2019)
42 Cal.App.5th 337, 341 [same]; *In re Estrada* (1965) 63 Cal.2d
740, 744–746 [absent evidence to the contrary, we presume the
Legislature intended amendments to statutes that reduce the
punishment for a particular crime to apply to all defendants whose
judgments are not yet final on the amendments' operative date].)

Neukomsaravia's prior prison term enhancements were based
on prison terms for convictions for grand theft of an automobile
(§ 487, subd. (d)(1)) and burglary (§ 459).  Because those crimes are
not sexually violent offenses (Welf. & Inst. Code, § 6600, subd. (b)),
section 667.5, subdivision (b), as amended, does not apply to him.
Accordingly, the true findings on the enhancement allegations
under section 667.5, subdivision (b) shall be stricken.

## DISPOSITION

The judgment is reversed in part and affirmed in part as follows. The carjacking convictions on count 1 as to each defendant are reversed based on insufficiency of the evidence. The true finding related to count 1 as to defendant Rodriguez under section 12022.7, subdivision (a) is stricken. The true findings on the enhancement allegations alleged against Neukomsaravia under section 667.5, subdivision (b) are stricken. Otherwise, the convictions and true findings are affirmed. After remand, the court shall resentence defendants.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12