Filed 12/10/25  P. v. Hernandez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID EPIE HERNANDEZ,<br><br>    Defendant and Appellant. | F088389<br><br>(Super. Ct. No. F21906591)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donahue, Assistant Attorney General, Amanda D. Cary and Jesica Gonzalez, Deputy Attorneys General, for Respondent.

-ooOoo-

## INTRODUCTION

On an unfortunately eventful day for appellant David Epie Hernandez, he first shot and killed his girlfriend Sarah H. during an argument in her north Fresno apartment.

He next walked to a restaurant in a nearby shopping center where he ordered food and drinks, refused to pay the bill, challenged the bartender to a fight, and then threatened to shoot him.

He left the restaurant and went to a smoke shop in the same shopping center where he robbed the clerk at gunpoint of cash and assorted merchandise and demanded the keys to the clerk's car. When the clerk told Hernandez he did not have a car, Hernandez took the loot and went to the pizza parlor next door.

K.O. was parked in a spot in front of the pizza place, sitting in the driver's seat talking on his phone with his engine still running. Hernandez tapped his gun on the driver–side window and told K.O. to get out and give him the car. But when Hernandez momentarily looked away, K.O. quickly backed out and drove away unharmed.

Meanwhile, at the donut shop next to the pizza parlor, N.K. had just arrived and parked his car in front. He got out and started to walk to the shop when Hernandez approached him and demanded that N.K. give him his car keys. When Hernandez produced a gun and pointed it at him, N.K. immediately complied and then fled inside. After loading it with the proceeds from the smoke shop robbery, Hernandez drove away with N.K.'s car.

Hernanadez went to a friend of a friend's nearby apartment. Police tracked N.K.'s phone, which was still inside the car, and found the car parked in the friend's apartment complex parking lot. After a stand–off, Hernandez eventually surrendered to a SWAT team that evening.

A jury convicted Hernandez of: (1) the second degree murder of Sarah H. with a firearm (Pen. Code,[1] §§ 187, subd. (a) & 12022.53, subd. (d)); (2) the robbery of the smoke shop with a firearm (§§ 211& 12022.53, subd. (b)); (3) the attempted carjacking of K.O. outside the pizza parlor with a firearm (§§ 664, 215, subd. (a) & 12022.53,

---

[1] All undesignated statutory references are to the Penal Code.

subd. (b)); (4) the carjacking of N.K. outside the donut shop with a firearm (§§ 215, subd. (a) & 12022.53, subd. (b)); and, lastly, (5) being a previously convicted felon in possession of a firearm (§ 29800, subd. (a)(1)).[2] (No charges were brought regarding the incident at the restaurant.) In a bifurcated court trial, the court found three aggravating sentencing factors were true. (See Cal. Rules of Court, rule 4.421, subds. (b)(1), (b)(2), and (b)(3).)

The court sentenced Hernandez to an aggregate determinate term of 27 years six months for the robbery, attempted carjacking, completed carjacking, and being a felon in possession of a firearm, along with the gun use enhancements. This was to be followed by a consecutive indeterminate term of 40 years to life for the murder of Sarah H. and its gun use enhancement.

Hernandez appeals, claiming only that his carjacking conviction must be reversed because there was insufficient evidence to show that N.K.'s car was taken from his immediate presence within the meaning of the carjacking statute.

We affirm.

### DISCUSSION

More specifically, Hernandez contends that his "constitutional right to due process in this case was violated because the evidence was insufficient as a matter of law to support his conviction for carjacking" N.K. of his car. Thus, he does not contend that the evidence presented at trial did not show *what happened*, or that there were *factual* inconsistencies or ambiguities casting doubts on his conviction. Rather, he claims that the evidence did not *legally* satisfy one of the elements of the crime of carjacking, i.e., that the evidence did not show that N.K.'s car was taken from his "immediate presence" within the meaning of section 215, subdivision (a)'s definition of carjacking. Because

---

[2] Hernandez was previously convicted of felony driving under the influence. (Veh. Code, § 23153, subd. (b).)

Hernandez does not challenge his other convictions, or his sentence, we need only focus on the facts surrounding the carjacking.

**Additional Background:**

The shopping center in question is located at the intersection of Champlain Drive and Perrin Avenue in north Fresno, near the apartment complex where Hernandez shot and killed Sarah H. earlier that day. It is laid out in an L-shaped traditional strip mall fashion. The Mexican restaurant where Hernandez ate and refused to pay is located where the two "legs" of the "L" join. Following in a line along one leg from the restaurant is a grocery store, a few other shops, and the donut shop where N.K. was accosted, the pizza place where Hernandez attempted to hijack K.O. of his car, and lastly, the smoke shop that Hernandez robbed at gunpoint.

N.K. went to the donut shop about noon that day to get some donuts for his grandchildren. He parked his car "facing the front of the store" in a stall "pretty much somewhere in front of the shop," where the shop was "right in the front" of his car. N.K. got out, locked his car, and "started to walk … towards the donut shop." He said that between the entry "doors of the stores" and the parking spots was "a small sidewalk area," and estimated it would take about "10 or 15 steps" to get from his car door to the donut shop entrance. Another witness described this sidewalk as a "mezzanine patio area," extending about six or seven feet from the donut shop door to the curb.

When N.K. first got out of his car, he noticed "somebody in the front of … [his] parking stall on the walkway … between the smoke shop that [was] to the right [of him] and the donut shop," but he "didn't pay too much attention" at the time. As he "started to walk towards the donut shop," N.K. passed this person, whom he later identified as Hernandez,[3] on the walkway and "heard him talking to me" from about "five or six feet"

---

[3] At trial, N.K. identified Hernandez as his carjacker, as did another witness who had watched from inside the donut shop.

away.  N.K. "disregarded him and … kept on walking."  In his "peripheral vision," however, N.K. saw Hernandez "approaching" him and N.K. "turned around and asked him what he want[ed]."

Hernandez said, "Give me your car keys."  N.K. replied, "What?" and Hernandez repeated the demand.  Hernandez then "brandished a gun" and pointed it at N.K.  Believing the gun was real, and concerned for his safety, N.K complied by pulling his car keys out of his pocket and giving them to Hernandez.  N.K. said they were about "five or six feet" apart when this occurred.

N.K. said that when Hernandez began to load his "belongings" into N.K.'s car,  he realized that he "needed to get out of the way" and leave Hernandez alone, so he fled into the donut shop.  After alerting the people inside as to what had just happened, N.K watched through the window as Hernandez continued to load his loot from the smoke shop robbery into N.K.'s car and then saw him drive away.

When asked whether "[a]bsent him pointing that firearm at you, would you have given him your vehicle?" N.K. testified, "Absolutely not."

The question before us is whether substantial evidence showed that N.K.'s car was taken from his "immediate presence" within the meaning of section 215, subdivision (a).

**Standard of Review**

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)  At the same time, when " 'reviewing a sufficiency of the evidence claim, the reviewing court's role is a limited one.' " (*People v. Alvarez* (2025) 18 Cal.5th 387, 470; cf. *People v. Flores* (2020) 9 Cal.5th 371, 411 ["The test for evaluating a sufficiency of evidence claim is deferential."].)  " ' "[W]e review the entire record in the light most favorable to the judgment below to determine whether it contains substantial evidence — that is, evidence which is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' "  (*People v. Holmes, McClain and*

*Newborn* (2022) 12 Cal.5th 719, 780; *People v. Oyler* (2025) 17 Cal.5th 756, 768, fn. 2 [" '[W]e review in detail the evidence in support of the prosecution's case' [citation] and 'view the evidence in the light most favorable to the judgment below.' "].)

Consequently, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

**Analysis**

Hernandez contends the evidence did not show that N.K.'s car was in his "immediate presence" when Hernandez took the keys from him at gunpoint while they stood together on the walkway that separated the parked car from the entrance to the donut shop. We disagree.

In relevant part, section 215, subdivision (a), defines carjacking as "the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence … against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear."[4]

Both parties agree, and we concur, that *People v. Johnson* (2015) 60 Cal.4th 966 (*Johnson*), is the defining case as to the meaning of "immediate presence" in the context of carjacking. However, they differ in their assessments of its legal import and factual applicability. Indeed, Hernandez goes so far as to say that *Johnson* was wrongly decided.

In *Johnson,* the victim was baking in her kitchen when the defendant entered her home, killed her, and took her car keys from either her purse or off the kitchen counter.

---

[4] The jury was instructed with CALCRIM No. 1650, which told them that the People must prove that "[t]he vehicle was taken from the immediate presence of a person who possessed the vehicle[.]" They were also instructed that "[a] vehicle is within a person's immediate presence if it is sufficiently within his or her control so that he or she could keep possession of it if not prevented by force or fear." Hernandez does not question this instruction.

He then used the keys to take her car, which was parked in her garage and separated from the kitchen by a breezeway. (*Johnson, supra,* 60 Cal.4th at p. 990.) The court considered whether the defendant had taken the *car* from the victim's "person or immediate presence" for purposes of the carjacking statute, and decided that a jury could reasonably infer that he had. (*Id.* at p. 992.)

As the court explained, "something is in a person's 'immediate presence' if it is ' " 'so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.' " ' " (*Johnson, supra,* 60 Cal.4th at p. 989.) Thus, the jury could have reasonably found that the victim's car keys were within her immediate reach, and that she would have retained possession of her keys — and thereby her car — if the defendant had not forcibly prevented her from doing so by killing her. (*Id.* at p. 990.) Applying the relevant standard of review, the court concluded that substantial evidence supported the carjacking conviction. (*Id.* at p. 992.) The court added that even though it "might not be a classic carjacking such as when a perpetrator approaches a car stopped at a red light and, at gunpoint, forces the driver and any passengers out, then drives the car away … all of the statutory elements of carjacking [were] met." (*Id.* at p. 990.) So too here.

Particularly instructive here is *People v. Hoard* (2002) 103 Cal.App.4th 599 (*Hoard*), a case cited with approval in *Johnson.*[5] In *Hoard*, the defendant entered a jewelry store, displayed a gun, and demanded and obtained the keys to the jewelry cases and to an employee's car. After the defendant left with his swag, the employee found that her car, which had been parked outside in a parking lot, was gone. (*Hoard, supra*, 103 Cal.App.4th at pp. 602, 608.)

The carjacking conviction was affirmed. The court rejected the defendant's contention that he did not take the car from the victim's immediate presence, reasoning

---

[5] See *Johnson, supra*, 60 Cal.4th at p. 990.

that "[d]efendant took possession of [the employee's] car by threatening her and demanding her car keys. Although she was not physically present in the parking lot when he drove the car away, *she had been forced to relinquish her car keys*. Otherwise, she could have kept possession and control of the keys and her car. Although not the 'classic' carjacking scenario [fn.], it was a carjacking all the same." (*Hoard, supra,* 103 Cal.App.4th at p. 609, italics added; see *People v. Gomez* (2011) 192 Cal.App.4th 609, 623–625 (*Gomez*), disapproved on other grounds in *People v. Elizalde* (2015) 61 Cal.4th 523, 538, fn. 9 [carjacking conviction upheld where defendants assaulted victim, then returned 10 to 20 minutes later to take the victim's truck, which was parked 10 feet away from the front of his apartment, while the victim watched through his apartment window]; see also *People v. Medina* (1995) 39 Cal.App.4th 643, 646–647 (*Medina*) [victim's car was parked outside the motel room where he was accosted, tied up, robbed, and his car keys and car were taken]; *id.* at p. 650 ["the victim need not actually be physically present in the vehicle when the confrontation occurs"].)

Hernandez insists that *Johnson, Hoard,* and *Gomez* were incorrectly decided because they all "present[ed] the same inadequate proof of 'immediate presence' " as he insists the current case does as well. To support his interpretation of "immediate presence," he instead offers us *People v. Hill* (2000) 23 Cal.4th 853 (*Hill*) and *People v. Coleman* (2007) 146 Cal.App.4th 1363 (*Coleman*). However, not only were these two cases decided long before *Johnson* but, more importantly, neither was an "immediate presence" case.

*Hill* involved the question of whether an infant could be the victim of a *separate count* of carjacking when both she and her mother were forced back into the car that was then driven away. The Court concluded that "an infant, like any person *may* be the victim of a carjacking." (*Hill, supra,* 23 Cal.4th at p. 860, original italics; see *id.* at p. 855.) Immediate presence was not at issue in *Hill* because both victims were *inside* the car when it was taken.

In *Coleman*, a shop owner drove his truck to work in the morning, put the keys in a rear work area, and then left the shop in a work vehicle. After he left, the defendant entered the shop, pointed a gun at the office manager, and demanded the keys to the truck. (*Coleman, supra,* 146 Cal.App.4th at p. 1366.) The office manager retrieved the keys from the back and handed them to the defendant. (*Ibid*.)

The issue was whether the office manager had *possession* of the truck, not her (or the owner's) *immediate presence* with regard to the truck. (*Coleman, supra,* 146 Cal.App.4th at pp. 1371–1373.) Because she "was not within any physical proximity to the [truck], the keys she relinquished were not her own, and there was no evidence that she had ever been or would be a driver of or passenger in the [truck]" (*id*. at p. 1373), the court refused to import a rule of *constructive possession* into the carjacking statute. (*Id.* at pp. 1371–1372.) The decisive factor, therefore, was the office manager's *possession* of the truck, not her or the absent owner victim's immediate *presence*. Indeed, the *Johnson* court also distinguished *Coleman* because possession was not at issue in *Johnson* and there was no question whether it was the murder victim's car or that she possessed the car or its keys. (*Johnson, supra,* 60 Cal.4th at p. 991 ["The murder victim owned the keys and the car, she was physically close to both, and the jury could have reasonably found she could have retained possession of both had defendant not killed her."].)

Hernandez provides no post–*Johnson* authority to support his contention and we have found none. It is now well–established that carjacking does not require a carjacking victim to be personally present either *in* or even immediately *next to* the vehicle for it to be taken from their immediate presence. Moreover, the offense may be committed even when only the vehicle's *keys* are taken from the victim by force or fear, so long as the victim could and would otherwise have retained control of the keys — and thus the vehicle — but for the defendant's use of force or fear.

It is important to keep in mind that carjacking is an offense against *persons*, not *property*. The gravamen of the crime is the use of force or fear against the *victim*, not the

9.

taking of the *vehicle*. Thus, carjacking is found in chapter 4, section 215 of the Penal Code's Title 8 ["Of Crimes Against the Person"]. As such, it is categorically distinct from chapter 5 of the Penal Code's Title 13 ["Of Crimes Against Property"], where section 487, subd. (b)(d)(1) [grand theft auto] is located. Similarly, the Vehicle Code places section 10851, subdivision (a) [vehicle taking with intent to temporarily or permanently deprive the owner of possession] in Division 4 ["Special Antitheft Laws"], chapter 4 ["Theft and Injury *of Vehicles*"] (italics added).

Moreover, neither carjacking, robbery, grand theft auto, nor vehicle taking under Vehicle Code section 10851, subdivision (a) is a lesser included offense of the others. (See *People v. Ortega* (1998) 19 Cal.4th 686, 693 ["neither carjacking nor [grand theft auto] is a necessarily included offense of the other"]; *People v. Domiguez* (1995) 38 Cal.App.4th 410, 418 ["Carjacking is not a necessarily lesser included offense to robbery, or vice versa[.]"]; *People v. Montoya* (2004) 33 Cal.4th 1031, 1035 [taking under Veh. Code, § 10851, is not a lesser included offense of carjacking because " '[c]arjacking is a crime against the possessor or passengers in a vehicle' " whereas unlawful taking of a vehicle " 'is a crime against ownership' "].) Similarly, carjacking "shall not be construed to supersede or affect [the offense of robbery] [and] [a] person may be charged with a violation of this section and [robbery]." (§ 215, subd. (c).)[6]

In essence, what separates carjacking from robbery, grand theft auto, and merely taking and using someone else's vehicle, is the unique danger to a victim when a defendant forcibly tries to take this particularly mobile type of property, regardless of

---

[6] Robbery requires an intent to permanently deprive the victim of their property, but carjackings often involve only a temporary taking of a vehicle. (See *Medina, supra,* 39 Cal.App.4th at p. 648 [" 'many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car),' " quoting Assem. Com. on Pub. Safety analysis of Sen. Bill No. 60 (1993–1994 Reg. Sess.) July 13, 1993, p. 1.)].) So too here. Hernandez only used N.K.'s car to make his getaway, just as he had tried to take a car from the smoke shop clerk and from K.O, but only in order to drive to a nearby apartment.

their underlying motivation and including when their intent is to merely use the vehicle for a transitory purpose.[7]

Here, the evidence unequivocally demonstrated that Hernandez took N.K.'s car keys from him at gunpoint while the two were standing on a sidewalk only steps between the car and the donut shop entry door. Hernandez completed the asportation element of the offense by then taking the car after N.K. had retreated into the donut shop. This was more than sufficient for a jury to reasonably find that Hernandez had taken the car from N.K.'s "immediate presence." If the elements of carjacking were met in *Johnson*, when the murder victim's car keys — which were in her kitchen although not on her person — were taken out through the breezeway and into her garage where the defendant found and then drove off in her car, so too do the facts here.

**Conclusion:**

Following *Johnson* and *Hoard*, we find that the legal meaning of the term "immediate presence" in section 215's definition of carjacking more than adequately encompasses the facts of this case. As a result, under our deferential standard of review, we also find there was substantial evidence from which the jury could have reasonably concluded Hernandez took N.K.'s car from his immediate presence.

Hernandez asks us to disregard *Johnson* as wrongly decided and to instead adopt the reasoning of the concurring and dissenting opinion of Justice Werdegar in that case. (See *Johnson, supra,* 60 Cal.4th at pp. 997–1001 (conc. & diss. opn., Werdegar, J.).) He candidly acknowledges that we may not do so because *Johnson* is binding Supreme Court

---

[7] The now–anachronistic term "joy–riding," historically used to describe the misdemeanor offense of temporarily taking another's vehicle, as found in a previous version of section 499b, does not adequately describe the offense Hernandez committed here. Nor does the "wobbler" offense of temporarily taking or driving another's car under Vehicle Code section 10851. The Legislature responded to this lacuna by enacting section 215. (See Stats. 1993, ch. 611, § 6 (Sen. Bill. 60).)

11.

precedent (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), but advises us that he does so in order "to preserve it for further review." So noted.[8]

However, his claim must be taken to our Supreme Court or to the Legislature. *Johnson* was decided a decade ago and in the interim the Legislature has not acted to amend the carjacking statute, nor has the Supreme Court found cause to question or modify its decision in *Johnson*. We apply statutes as written and as authoritatively interpreted by our Supreme Court. We do not rewrite them.

## DISPOSITION

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


MEEHAN, Acting P. J.


DE SANTOS, J.

---

[8] Concurring and dissenting opinions are not precedential authority binding on the lower courts. (*People v. Ceballos* (1974) 12 Cal.3d 470, 483; *People v. Lopez* (2012) 55 Cal.4th 569, 585; see *Glover v. Board of Retirement* (1989) 214 Cal.App.3d 1327, 1337 [" '[A] majority opinion of the Supreme Court states the law and … a dissenting opinion has no function except to express the private view of the dissenter.' "].)